JAMES A. WRIGHT et al., Respondents, *v.* ARTHUR A. BROWN, Appellant.

If an order of arrest is granted in a case not authorized by the Code, or where the affidavits fail to establish one of the specified causes of arrest, the order may be reviewed in this court; but where the granting of the order depends upon the credibility of witnesses, or upon inferences to be drawn from circumstances as to which intelligent men may fairly differ, the general rule of this court is to follow the conclusions of fact of the court below.

As to whether the court has power to review the merits of the order upon the facts, *quære.*

Where a vendee purchases property upon credit, knowing that he is insolvent, without disclosing that fact, and with intent not to pay for the property, fraud may be affirmed.

The alleged ground for an order of arrest was fraud on the part of defendant, in contracting a debt for the purchase-price of 6,000 bushels of malt. The affidavits disclosed that defendant was a brewer; he gave his notes for the malt at two, three and four months. Defendant was, at the time, indebted to his wife about $75,000, and to others about $55,000, a portion of which was in suit and liable at any time to go into judgment. His property was all personal, worth about $20,000. The notes were given January eighth; on the fourteenth he borrowed of his brother $9,000, giving a chattel mortgage on all his property, except the malt so purchased; on the fifteenth, he borrowed of another person $4,500, on 5,000 bushels of the malt; on the eighteenth,

SICKELS.—VOL. XXII.    1

he sold all his property, except the malt, to his wife, subject to the mortgage, the purchase-price being applied upon his indebtedness to her; and on February eighth he sold to her the malt, subject to the loan, the balance being applied in the same manner, and stopped business. Defendant's affidavit set forth facts tending to explain these circumstances, and alleged that he intended to continue in business and to pay for the malt when he purchased. No false representations were claimed to have been made by him, and no act or device was resorted to, to deceive plaintiff. Defendant was solicited to purchase, and urged to increase the amount beyond what he desired to purchase. *Held* (CHURCH, Ch. J., EARL and ANDREWS, JJ., dissenting), that upon the case made by plaintiff, the inference was legitimate that defendant must have known when he purchased the malt, that he could not continue in business and pay for it, and hence was chargeable with an intent not to pay; that to what extent such case was impaired by the averments and explanations of defendant, depended partly upon the force to be given to the facts and the inferences to be drawn therefrom, and the conclusion of the court below, adverse to defendant, was justifiable, and so conclusive here.

(Argued June 18, 1876; decided September 19, 1876.)

APPEAL from order of General Term of the Supreme Court in the second judicial department, affirming an order of Special Term denying a motion to vacate an order of arrest.

It appeared by plaintiffs' affidavit, that about December 23, 1874, defendant contracted, through a broker, to purchase of plaintiffs 6,000 bushels of malt for $7,920.57, upon credit, except $4.76 for storage and charges. The malt was billed to defendant, December 31, 1874, and on January 8, 1875, defendant gave his notes for the purchase-price less the sum so paid in cash, at two, three and four months. The order of arrest was applied for and granted on the ground of fraud in said purchase. The facts upon which the charge of fraud was based, and the substance of the opposing affidavit of defendant, are set forth in the opinion.

*Robt. Johnstone* for the appellant. If defendant knew that he was insolvent and intentionally concealed this fact, his silence was not a fraud upon plaintiffs. (*Mitchell* v. *Warden*, 20 Barb., 253; *Nichols* v. *Pinner*, 18 N. Y., 295; *Brown* v.

*Montgomery*, 20 id., 293 ; *Hennequinn* v. *Naylor*, 24 id., 139 ; *Chaffee* v. *Fort*, 2 Lans., 87 ; *Fisher* v. *Conant*, 3 E. D. S., 199 ; 2 Pars. on Cont. [4th ed.], 270.) Fraud must be proved affirmatively. (18 N. Y., 300 ; *Wakeman* v. *Dalley*, 51 id., 27, 31 ; *Marsh* v. *Falker*, 40 id., 666 ; *Hathaway* v. *Johnson*, 55 id., 95 ; *Sturges* v. *Cunningshield*, 4 Wheat., 200 ; *Van Hoffman* v. *City of Quincy*, 4 Wal., 553 ; *Claflin* v. *Frank*, 8 Abb. Pr., 412.) To sustain an order of arrest plaintiffs must show an intention to defraud existing in the mind of the purchaser at the time of the purchase. (55 N. Y., 93 ; *Burchell* v. *Strauss*, 8 Abb. Pr., 57 ; *Spies* v. *Jael*, 1 Duer, 163 ; *People* v. *Kelly*, 35 Barb., 444.) If a clear case of fraud has not been proved, the order of arrest will not be sustained. (*Un. Bk.* v. *Mott*, 6 Abb. Pr., 315 ; *Chapin* v. *Seeley*, 13 How. Pr., 490 ; *Hernandez* v. *Comobete*, 10 id., 449 ; *Corwin* v. *Freeland*, 6 N. Y., 565 ; *Falconer* v. *Elias*, 3 Sandf., 731.) The fact that defendant sold out to his wife is no evidence of fraud in this case. (*Fairbanks* v. *Mathersell*, 41 How. Pr., 274 ; *Sheldon* v. *Clancy*, 42 id., 186 ; *Savage* v. *O'Neil*, 44 N. Y., 298 ; *Vanderbilt* v. *Gould*, 39 id., 639 ; *McCartney* v. *Welsh*, 44 Barb., 271 ; *Wordsworth* v. *Sweet*, id., 268 ; *Danforth* v. *Woods*, 11 Paige, 9.) An appeal will lie to the Court of Appeals from the order of General Term denying motion to discharge defendant from arrest. (55 N. Y., 93 ; 34 id., 555 ; 25 id., 501 ; *Tracy* v. *First Nat. Bk. of Selma*, 37 id., 523 ; *Townsend* v. *Hendricks*, 40 How., 143 ; Code, § 11, sub. 4 ; *Guin* v. *Tompkins*, 1 Code R. [N. S.], ; *Wright* v. *Rowland*, 4 Keyes, 165 ; 36 How., 115 ; Laws 1847, chap. 280, § 8 ; 2 R. S., 167, § 27 ; Laws 1854, chap. 270, § 1.)

*Winchester Britton* for the respondents. The purchase of goods by an insolvent, concealing the fact of insolvency, with the existing intent not to pay for them, is a fraud upon the vendor, though no affirmative representations are made by the vendee. (*Nichols* v. *Michael*, 23 N. Y., 264–273 ; *Hennequinn* v. *Naylor*, 24 id., 139 ; *Devoe* v. *Brandt*, 53 id., 462.) This court could not review on appeal the affidavits on which

the order of arrest was granted to determine the preponderance upon conflicting allegations. (*Hathaway* v. *Johnson*, 55 N. Y., 93.)

*Per Curiam.* This is an appeal from an order affirming an order denying a motion to vacate an order of arrest. It is competent for this court to review such an order if it involves a question of law, as when the order of arrest was granted in a case not authorized by the Code, or when the affidavits fail to establish one of the specified causes of arrest. If the party applying for the order fails to establish a proper case, the order should be denied, and if granted, it is the legal right of the party to have it rescinded, and if refused, an appeal will lie to this court. But when it depends upon the credibility of witnesses, or upon inferences to be drawn from circumstances in respect to which intelligent men may fairly differ, the general rule is in this court to follow the conclusion of fact arrived at by the court below.

The alleged ground for the order of arrest is that the defendant was guilty of fraud in contracting the debt for the malt, and the question to be decided below was, and in this court is, whether the fraud was sufficiently established. It is not claimed that the defendant made any representations or statements concerning his financial situation or pecuniary means, and it is well settled that a mere failure to disclose insolvency, although known to the purchaser at the time, is not regarded as fraudulent so as to affect the title to the property purchased, or render the purchaser amenable to an order of arrest. (18 N. Y., 295.) "If he makes no false statement, and resorts to no acts or contrivances for the purpose of misleading the vendor, it is not, I think, a fraud, to say nothing on the subject." (Id., per SELDEN, J., 20 N. Y., 293; 20 Barb., 253; 2 Lans., 87.) But if there is a condition of known insolvency undisclosed, and an existing intention on the part of the purchaser not to pay for the property, it has been held that fraud may be affirmed. (23 N. Y., 264; 24 id., 139–153; id., 462.) That the defendant was insolvent at

the time he purchased the malt, that is, that his obligations were much larger than his assets, and that he did not disclose such insolvency, is not disputed, and the plaintiffs charge that he then knew that he could not pay, and intended not to pay for the malt. The principal facts relied upon to establish such intent, are these: The defendant was a brewer, engaged in the manufacture of ale. He contracted for the malt through a broker, about the 23d of December, 1874, a bill of the same was made the 31st of December, and notes given on the 8th of January, 1875, and the malt was delivered between those dates. He was indebted at the time to his wife about $75,000, and to other persons about $55,000, of which latter sum about $15,000 was in suit, and liable at any time to go into judgment and execution. His property consisted of material and personal property in and about the brewery worth about $20,000. On the 14th of January, 1875, he borrowed $9,000 of his brother and gave him a chattel mortgage on all the personal property, except the malt purchased of the plaintiffs; on the next day (the fourteenth) he borrowed, upon 5,000 bushels of said malt, $4,500 from an outside party, and on the 18th of January, 1875, he sold all his property in and about the brewery, except said malt, to his wife for about $20,000, subject to the mortgage which she assumed, and the balance of the purchase-money was applied upon the defendant's indebtedness to her; and subsequently, on the eighth day of February, he sold to his wife the 5,000 bushels of malt subject to the loan of $4,500, the balance, about $1,100, was paid by applying it upon her debt. The malt sold amounted to $7,920.57, and except $476 in cash, was sold on a credit of two and four months. Upon these facts it is claimed that the defendant must have known at the time of the purchase that he was unable to continue the business or to pay for the malt, and could not have intended to pay for it; and that this is confirmed by his stopping business immediately afterwards, and transfering all his property to his wife, including the property purchased of the plaintiffs.

There were two motions to vacate the order of arrest, the first having been denied with leave to renew, and the defendant, by way of explanation, alleges that at the time he purchased the malt he was solicited to purchase by the broker, that he intended to purchase only 2,000 bushels at first, but after urgent solicitations he consented to increase the amount to 6,000; that he purchased it in the usual way for use in his brewery, and that he then expected to continue the business and pay for the barley; that he expected to defend the action for $12,000 successfully, and believed that he would do so until the eleventh of January, when he examined the evidence taken by commission in England, and until that time he supposed that he had due him $19,000 from his English firm, and that although disappointed as to both items he still believed that the loan from his brother of $9,000, and the loan of $4,500 on the malt, would enable him to continue business; that he had lost a handsome fortune in three years, partly in commercial ventures and in aiding his son, and partly in building up the brewery business, which he had increased from a business of 9,000 to 25,000 barrels, and that the business was then prosperous, and that during the previous year he had paid his obligations at maturity and had paid out over $200,000; and he assigns as a reason for transferring his property, his continued illness, which became so severe that he was unable to attend to his business, and was then disheartened and discouraged. Upon the case made by the plaintiffs the inference is legitimate that the defendant must have known when he purchased the barley that he could not continue in business, and that he could not pay for it, and hence that he is chargeable with an intent not to pay for it; and this is confirmed by the close connection of events and by finally transferring all his property to his wife, including the malt so recently purchased of the plaintiffs. To what extent the denial and explanation of the defendant should be deemed to impair the case made by the plaintiffs, depends partly upon the force to be given to, and inferences drawn from, the facts, the most important of which are undisputed. From the whole case both the Special

and General Terms draw conclusions adverse to the defendant, and we cannot say that they were not justified by the facts, judging the defendant by the ordinary motives which influence men in the conduct of pecuniary affairs, and, therefore, within the general rule referred to, the decision of the court below should be deemed conclusive upon this court.  To weigh testimony, pass upon the credibility of witnesses, and draw inferences, is in general not the province of this court in reviewing orders of the Supreme Court.  As was said in the *People* v. *The Superior Court of New York*, "there is no standard by which the weight of conflicting evidence can be ascertained.  Different courts and juries and individuals would entertain different opinions upon the subject."  The determination of such questions is, in some sense, discretionary, and for that reason orders upon motions for new trials, upon the ground that verdicts are against the weight of evidence, are not appealable.  (Id. ; 26 Wend., 143 ; 53 N. Y., 325.)  But without passing upon the abstract question of power, it follows from the views expressed that the order must be affirmed.

CHURCH, Ch. J. (dissenting).  Assuming that this court has the power to review the merits of the order upon the facts, as I think it has, after a careful examination of all the facts, I am not satisfied that the defendant at the time he purchased the malt had an existing intention not to pay for it.

When no representations are made, and no acts or devices resorted to, to deceive the vendor, the circumstances should point with great clearness to a want of good faith, to justify a finding of a corrupt intent.  In this case it is conceded, that no representations, acts or devices were resorted to, and, in addition to this, it appears that the defendant was solicited to purchase the property, and urged to increase the amount beyond what he at first desired to purchase.  It also appears that the property was purchased upon the usual terms, and was needed for use in the defendant's brewery, and although the quantity was somewhat large it was not an unusual quan-

tity to purchase, and from the fact that it would stock the brewery but two months, we can see that it was not an improper quantity to purchase. The circumstances attending the sale do not furnish any evidence of bad faith, and they go far in repelling any suspicion of an improper intent.

It is said that his pecuniary condition was so embarrassing that he must have known that he could not continue in business, and could not pay for the barley. To my mind the facts fall far short of establishing this conclusion. The debt to his wife of about $75,000, was considerably more than to all others, and so long as he continued in business, we may presume that he had no fear of interference from her. Of his other debts amounting in all to about $55,000, it is true, that two of them, one for $12,000, and one of $3,000, had been sued and defences had been put in, and one of about $1,800 was about being sued. As to the balance it does not appear that he was crowded, nor but that he could meet them at maturity. The action for $12,000 was in demands incurred by an English firm, of which he had been a member, and if his evidence is to be believed, he supposed until the eleventh of January, after the purchase, that he had a good defence. The defence in substance was that the action was prosecuted by a nominal plaintiff, but really for the benefit of his former partner in England, and that such partner was indebted to him in the sum of $19,000, and the defendant says, that not until the eleventh of January, when he examined the evidence taken on commission in England, did he ascertain that his defence could not be sustained, and also that his demand for $19,000 was not then available. And he also states that notwithstanding this disappointment, he believed he could still continue in business, and on the fourteenth he borrowed $9,000 of his brother, and $4,500 upon 5,000 bushels of the malt purchased which he used in his business, but that his illness became so severe that he was unable to do business and became discouraged, and on the eighteenth sold out.

If these statements are true, and they are neither incredi-

ble nor improbable, the allegation that he must have known that he could not continue in business when he purchased the malt, which was about the twenty-third of December, has very little foundation. A prosperous business of $200,000 for the past year, the obligations incident to which to that amount had been promptly met, would not, ordinarily, be closed by a judgment of $3,000, nor even by judgments of $15,000. It would not require an over sanguine man to attempt to overcome such an amount of pressing demands, so, that aside from the supposed alleged defence to $12,000, it is very far from clear that the defendant did not believe, on the twenty-third of December that he would be able to weather the storm. Many a business man has bridged over a worse situation than that with a business apparently so prosperous. The proximity of events, the purchase of the malt, and the failure and final selling out is a circumstance entitled to consideration upon the point, but it is not conclusive nor inconsistent with a purchase in good faith. Every failure has its accumulation of embarrassments and its final culmination, but the explanation of the defendant is not unreasonable ; he may have struggled on in the belief that he could go through ; and the increasing illness which incapacitated him from doing business, may have rendered the failure inevitable. In *Nichols* v. *Pinner* (18 N. Y., 295) PRATT, J., held, that upon a question of fraudulent purchase, in April, the fact that the purchaser made an assignment of all his property for the benefit of creditors, in August, did not tend to prove that he did not intend to pay for the property purchased; and, although the case was decided upon another point, there was no dissent from this position. In this case the intervening time was nearly a month, and the fact is far from being decisive under the circumstances developed. A person embarrassed often struggles along in the hope of being able to continue business, under very adverse circumstances, and if he finally fails it would be a harsh judgment to attribute to him, during this period of uncertainty and perhaps delusive hope, a fraudulent intent in transacting his business and in buying

and selling in the ordinary way. Nor is the circumstance that the sale of the personal property was made to the wife, and the consideration applied upon her debt, decisive. The continuance of the business was important to its success. A temporary suspension would have been fatal, without benefiting any one; the price paid by the wife for the property was its full value; nothing appears to impeach her position as a *bona fide* creditor. While her husband was doing business she was, doubtless, a lenient creditor, but she had the same legal right to purchase this property as any other creditor. A wife, as a *bona fide* creditor of her husband, occupies the same legal position as any other creditor. In this case she owned the real estate and purchased the personal property, subject to the mortgage of $9,000, and the affidavits state, paid its full value, and more than any one else would pay for it. The fact that the sale was made to the wife instead of another, is of slight moment upon the question of original fraudulent intent. As to the sale of 5,000 bushels of the malt purchased to the wife, the sale was not made until the eighth of February, and then was made subject to the loan upon it of $4,500, leaving only $1,100 purchase-money. As a matter of equity, considering the recent purchase, this balance of $1,100 might have been paid to the plaintiffs. The defendant might have done this; and, as it was the avails of the identical property purchased, perhaps a nice sense of honor would have caused this application of it. But the question is not whether the actual disposition made was the most just or equitable, but what should be its effect in establishing an original fraudulent intent. It was a legal sale and is not controlling upon the point. The fact is as consistent with innocence as guilt in the original purchase. On the whole, I think the plaintiff failed to establish so clear a case of fraudulent intent in purchasing the property as the law requires, especially in a case where no representations were made, and no acts or devices resorted to by the defendant, and when the property was not purchased until after repeated and urgent solicitation, and was needed in the prosecution of defendant's business. The

defendant may have been over sanguine and too hopeful, and may have indulged in delusive expectations. In the language of PRATT, J., in 18 New-York (*supra*), "This is an every-day experience in the commercial world, and it would be hard, indeed, if the unfortunate victim of hopes, that looked to him at the time as reasonable, must, in his misfortunes, be judged by the actual instead of the possible results." It is a circumstance in the defendant's favor, not conclusive, but competent to be considered, that he and his wife, his son, who was conversant with the business, and his book-keeper, testify that, at the time this malt was purchased, the defendant expected to go on with business, and they believed that he could do so successfully, and could pay for the malt and all other obligations, and the broker who sold the malt states that he believes the defendant made the purchase in good faith, intending to pay for it.

The order of the General and Special Term should be reversed, and the motion to vacate the order of arrest granted.

All concur for affirmance, except CHURCH, Ch. J., ANDREWS and EARL, JJ., dissenting.

Order affirmed.