ALICE M. MORRIS et al., Respondents, *v.* JAMES C. TALCOTT, Appellant.

While this court will not review an order denying a motion to vacate an order of arrest, obtained upon the theory of a fraudulent contraction of a debt, when the facts and circumstances proved, or the legitimate inferences therefrom, tend to establish the existence of a fraudulent intent, yet when there is no evidence legitimately tending to establish such a conclusion, and the natural inferences to be drawn from the facts proved do not necessarily lead to the presumption of a fraudulent intent, a question of law is presented for the judgment of the court.

Representations made by a party, with a view of procuring credit with another, may only be held to apply to and affect future credits where they are made in the course of the dealings and under circumstances from which it may be inferred that they were made with an intent to induce a continued credit.

An intent to defraud may not be imputed to a purchaser of property on credit merely from the facts that he was, to his knowledge, insolvent at the time of the purchase, and that he omitted to disclose such condition to his vendor; these must be accompanied by facts disclosing an intent to acquire the property without paying for it.

A party seeking to establish a cause of action, or a right to a remedy against another, based upon an alleged fraud, must show affirmatively facts and circumstances necessarily tending to establish a probability of guilt, if the evidence is capable of an interpretation equally consistent with innocence as with guilt, the former meaning must be given to it.

An order of arrest was granted on the ground that defendant induced plaintiffs to give him credit by means of representations as to his responsibility, known to him to be false. The facts stated were, in substance, as follows : In April, 1882, defendant, upon being requested by plaintiffs to give them an indorser upon a note for the balance of an existing account, refused to do so, saying he was "perfectly good and solvent without an indorser." The credits alleged to have been fraudulent were stated to have been obtained between September 6 and December 9, 1882. Some time in the month of September defendant examined his books and discovered his insolvency, and in December made a general assignment for the benefit of his creditors. *Held,* that plaintiffs failed to make out a case justifying the granting of the order ; that the representation made in April did not appear to have been made in contemplation of any new credit, and had no legitimate connection with the credit afterward obtained ; also, that there was no proof even tending to show any fraudulent intent prior to defendant's discovery of his insolvency.

*Morris* v. *Talcott* (29 Hun, 426), reversed.

(Submitted April 29, 1884 ; decided May 6, 1884.)

APPEAL from order of the General Term of the Supreme Court, in the first judicial department, made March 30, 1883, which affirmed an order denying a motion to vacate an order of arrest granted herein.    (Reported below, 29 Hun, 426.)

This action was brought to recover for goods which the complaint alleged were sold and delivered to defendant by plaintiff "between the 5th day of September, 1882, and the 10th day of December, 1882." The complaint also alleged that, to induce plaintiffs to give the credit, defendant, in April, 1882, represented that he was solvent and worthy to be trusted; that he knew said statements to be false when he made them, as he knew at the time that he was insolvent; that he made them with intent to defraud, and that relying thereon plaintiffs sold the goods on credit. The material portions of the affidavits upon which, with the complaint, the order of arrest was granted, are as follows:

"That the above-named plaintiffs are copartners in trade, doing business as dealers in hay, feed, etc., at One Hundred and Thirty-first street and Twelfth avenue, New York city, under the firm name of Morris & Vedder; that the defendant, James C. Talcott, dealt with deponent's said firm of Morris & Vedder, from about July 1, 1881, until about the 15th day of April, 1882, when said Talcott settled his account with Morris & Vedder by giving his note to said firm at sixty days, for the sum of $526.06, the balance then due to said firm; that previous to the time said note was made, deponent declined to take said note in payment for said balance due, unless said Talcott should cause said note to be indorsed by some responsible party as additional security for the payment thereof, whereupon said Talcott informed deponent that he was perfectly good and solvent without any indorser, and therefore would not give any such indorsement; that thereafter, and on or about the 6th day of September, 1882, said Talcott re-commenced his dealings with deponent's said firm of Morris & Vedder by procuring on that day a bill of goods, which, relying upon the statements made by said Talcott in April, 1882, as herein set forth to deponent, was delivered by deponent's said-firm of Morris & Vedder to said

Talcott upon credit ; that said new dealings continued until the 9th day of December, 1882, when deponent's said firm becoming satisfied that said statements so made as aforesaid were false, and, learning that said Talcott had already made or was about to make an assignment, determined not to credit him further.

That said Talcott never made any other or further statement, as to his solvency, than that made to deponent in April, 1882, and deponent is informed and believes that such statements were then false and untrue, and that at the time they were made said James C. Talcott knew them to be false, and that he made such statements in order to induce plaintiffs' said firm to give him credit and thereby cheat and defraud plaintiffs' said firm ; that said Talcott was indebted to one F. L. Talcott, and to divers other persons, many thousand dollars over and above his assets and resources, and was in fact insolvent and unable to pay all his debts ; that at the time said Talcott sought the new credit in September, 1882, as deponent is informed and verily believes, said Talcott was deeply in debt to said F. L. Talcott and divers other persons in a sum largely in excess of his assets and resources, and was in fact insolvent and unable to pay all his debts, and that although said Talcott was then well aware of his insolvent condition, he willfully and fraudulently suppressed and concealed the fact of his insolvency from plaintiffs at the several times of obtaining said merchandise, and never modified or corrected his said false statement of solvency made to plaintiffs in April, 1882.

" That on December 12, 1882, deponent called at the store of the defendant, One Hundred and Sixtieth street and Tenth avenue, city of New York, for the purpose of collecting the amount due to the plaintiffs, and there saw William M. Guilfoyle, who for some time prior thereto had been, and who deponent then believed, was defendant's clerk ; that, greatly to deponent's surprise, said Guilfoyle then told deponent that there was no money for the plaintiffs ; that he (Guilfoyle) had bought the place and fixtures from ' Talcott Sons,' brokers (a firm composed of the father and brothers of the defendant), for the sum

of $1,500 cash, and that the defendant had made an assignment to said firm of Talcott Sons.

" That the next day deponent went to Roslyn, L. I., where the defendant resides, and there saw the defendant. I asked him what was the matter. He replied that he examined his books in September, and discovered that he was in debt about $2,200, over and above all assets, without including an indebtedness to his father of about $13,000, which had existed for a number of years. I said, why then did you go on and buy goods from plaintiffs when you knew you were insolvent ? to which he replied that other parties had refused him credit, and that was the reason why he came to plaintiffs and obtained the goods mentioned in the complaint, and that since the last delivery, to-wit, December 9, 1882, his clerk had told him that plaintiffs had refused to give him further credit, upon which he went to his father and told him that he might as well close the business. He further stated to me that he had made an assignment to Talcott Sons, December 7 or December 9, 1882, but that he would do something for plaintiffs, and that they would hear from him by the 16th inst."

The motion to vacate was made upon the papers upon which the order of arrest was granted.

*Benjamin W. Downing* for appellant. There can be no ground for arrest on the representations as to solvency made by the defendant April 15, 1882, because they were made not to induce plaintiffs to sell, but for the sole, only and expressly stated object of inducing plaintiffs to give defendant time on a note for an indebtedness already incurred, and to take the same without an indorser. (14 Wend. 547.) The mere omission of a purchaser of goods to disclose his insolvency to the vendor is not a fraud. (18 N. Y. 295.) The law does not, in ordinary cases, impose upon a purchaser of property the duty to disclose to the seller, at or before the sale, the state of his pecuniary circumstances, however desperate they may be, and known to him to be. (*Mitchell* v. *Worden*, 20 Barb. 253; *Nichols* v. *Penner*, 18 N. Y. 295 ; *Styles* v. *Howland*, 32 id.

316; *Wright* v. *Brown*, 69 id. 9; 2 Kent's Com. [4th ed.] 490; *Mitchell* v. *Worden*, 20 Barb. 259.) Constructive guilt of a debtor, who is innocent in fact, is not sufficient ground for imprisonment. (88 N. Y. 669; 1 Duer, 669; 13 Abb. 415; 28 Barb. 296; 10 Abb. 130; 16 id. 454; *Anonymous*, 67 N. Y. 598.)

*Charles W. Dayton* for respondents. If, in addition to known insolvency, a purchaser does any act whatever tending to mislead, or if coupled with the concealment of insolvency, there be found an intention not to pay for the goods obtained upon credit, then an order of arrest against such purchaser will be sustained. (*Nichols* v. *Michael*, 23 N. Y. 264.) The order appealed from should be affirmed, with costs. (*Wright* v. *Brown*, 67 N. Y. 1; 29 Hun, 426.)

RUGER, Ch. J. Upon an appeal from an order denying a motion to vacate an order of arrest, obtained upon the theory of a fraudulent contraction of the debt, this court will not review the order when the facts and circumstances proved, or the legitimate inference deducible from such facts, furnished some evidence tending to establish the existence of a fraudulent intent on the part of the defendant in the creation of the debt. (*Wright* v. *Brown*, 67 N. Y. 1.)

But when there is no evidence legitimately tending to establish such a conclusion, and the natural inferences to be drawn from the facts stated do not necessarily lead to the presumption of a fraudulent intent, a question of law is presented which calls for the judgment of this court.

The motion under review was based upon the original papers used in obtaining the order of arrest, and, therefore, no question arises over conflicting evidence or in relation to the credibility of witnesses, and the sole matter for our consideration is whether there are any facts or circumstances disclosed in such papers upon which a finding of fraud could be properly founded.

We are of the opinion that the proof was insufficient to sus-

tain such a finding.    The grounds upon which it was attempted to be supported were :

*First*. That the defendant falsely and knowingly made representations with reference to his responsibility which induced the plaintiffs to give him credit ; and,

*Second*. That the evidence tended to establish a fraudulent design on the part of the defendant to obtain the plaintiffs' property without paying for the same.

The only evidence to support the charge of fraudulent representations is that furnished by the proof that the defendant, in April, 1882, upon being requested by the plaintiffs to give them an indorser upon a note for the balance of an existing account, refused to do so, saying that he was " perfectly good and solvent without an indorser."

There is no evidence in the case tending to rebut the legal presumption of the truth of this statement, except that arising from the proof that the defendant failed in business nine months thereafter, under circumstances undisclosed by the proof in the case.

We do not think that this fact alone was sufficient to establish the falsity of the representations alleged, neither do we think that these representations had any legitimate connection with the credit afterward extended to the defendant.    The representation was not made in contemplation of any new credit, or with a view of continued dealings between the parties, but was obviously made solely as a reason for non-compliance with the plaintiffs' request.    No further dealings were had between the parties until the month of September thereafter, when the defendant again commenced to purchase goods of the plaintiffs.

There is nothing from which it can be inferred that the defendant, in making the representation in question, intended it as an inducement for a further credit with the plaintiffs, or from which he could have supposed that they regarded it in that view.    While representations made by a party with a view of procuring credit with another may be held to apply to and affect subsequent credits extended by the vendor to the vendee,

yet such representations, in order to have that effect, must be made in the course of the dealing and under circumstances from which it may be inferred that they were made with an intent to induce a continued credit. (*Dambmann* v. *Schulting*, 75 N. Y. 61.)

We do not think that these circumstances exist in this case, or that the representations can be referred to to support the imputation of the fraudulent intent alleged to have existed five months thereafter when opening a disconnected course of dealing. That intent must be found from the other circumstances appearing in the case, if it be found to exist at all, in connection with the purchases in question.

The credits alleged to have been fraudulently obtained by the defendant are stated to have been so obtained between September 6, 1882, and the 9th day of December thereafter.

It is further shown by the admission of the defendant that some time in the month of September, 1882, he had examined his books and discovered his insolvency. That he then found that he was owing about $2,200 more than his assets, besides an indebtedness of $13,000 to his father, which had existed for a number of years. It further appeared that in December the defendant made a general assignment to his father and brothers of all his property for the benefit of his creditors.

It is not alleged that any fictitious debts were entered in this assignment, or any property fraudulently withheld from the inventories, or but that the disposition of the debtor's property thereby made was fair and equal among his creditors.

No proof is given of the nature, extent or character of the defendant's business, or the amount or value of the assets passing under his assignment. There is proof that the place of business and fixtures of the defendant were sold, by his assignees, in December to one Guilfoyle for $1,500, but what part of such assets the " place and fixtures " constituted, nowhere appears. It may fairly, perhaps, be inferred from these facts, that the defendant was insolvent, and that he discovered this insolvency as early as the 1st day of October, 1882, but we

do not think any thing further than this can fairly be inferred from them.

The time when the indebtedness in question accrued, except that it was between September 5 and December thereafter, does not appear; and for aught that is shown in the papers it may all have been created before the discovery of his insolvency by the defendant.

There is no proof in the case which even tends to show the existence of a fraudulent intent prior to this discovery.

The fraud charged against the defendant herein is of the nature of a crime, and cannot be presumed, but must be established by evidence. (*Henry* v. *Henry*, 8 Barb. 592; *Ward* v. *Center*, 3 Johns. 281; *Jackson* v. *King*, 4 Cow. 207.)

While it is true that it may be proved by circumstantial evidence, and the inferences legitimately deducible therefrom, yet the defendant is entitled, in the judicial consideration of the proofs, to the application of the rule, that the presumptions of the law are in favor of the innocence of the person accused.

A party, therefore, relying upon the establishment of a cause of action, or a right to a remedy against another, based upon the alleged commission of a fraud by such person, must show affirmatively facts and circumstances necessarily tending to establish a probability of guilt, in order to maintain his claim. When the evidence is capable of an interpretation which makes it equally as consistent with the innocence of the accused party as with that of his guilt, the meaning must be ascribed to it which accords with his innocence rather than that which imputes to him a criminal intent.

It is well settled in this State that an intent to defraud cannot be imputed to a party who contracts a debt knowing that he is insolvent, merely from the fact of his insolvency, and his omission upon a purchase of property upon credit to disclose such condition to his vendor. (*Nichols* v. *Pinner*, 18 N. Y. 295; 23 id. 264; *Wright* v. *Brown*, 67 id. 9; *People's Bank* v. *Bogart*, 81 id. 108.) A condition of known insolvency on the part of an intending purchaser of property, accompanied

with an intention to acquire the property of his vendor without paying for it, constitutes such a fraud as will make the vendee liable to arrest in an action for the debt; but the intention not to pay can no more be inferred from the mere fact of insolvency, than the fact of insolvency can be inferred from the existence of an intention not to pay. In either case it is essential that the necessary facts be made out by competent evidence.

We do not think that upon the evidence in this case the intention can legally be imputed to the defendant, that he commenced the course of dealing which resulted in the debt sued for, with the intent not to pay for the property purchased; and, therefore, the orders of the General and Special Terms should be reversed, and the motion vacating the order of arrest granted, with costs.

All concur.

Ordered accordingly.