(13 Misc. Rep. 442.)

## JONES v. ALLAN.

(Supreme Court, Special Term, Niagara County. June, 1895.)

EQUITY—RESCISSION OF CONTRACT—PROOF OF FRAUD.

In an action to rescind a contract for the sale of two canal boats, on the ground that defendant, with intent to deceive plaintiff, falsely and fraudulently represented that the boats were in good condition, that their timbers were sound, and that the boats were 12 and 13 years old respectively, when in fact they were 13 and 14 years old, it appeared that the company to which plaintiff made application for insurance on the boats had them examined by tearing off the lining at stem and stern, and boring into the timbers, which proved so rotten that the company refused to insure. There was no evidence that defendant knew that the timbers were rotten. At the time of the sale the boats had just come from the repair dock, to which defendant had sent them with direction that they be put in a fit condition, and without limiting the cost of the repair. The statements as to the age of the boats seemed to be mere expressions of opinion. *Held*, that plaintiff could not recover, as it was not shown that defendant knew that the representations were false, or that he assumed to know and intended to convey the impression that he knew them to be true, though conscious that he had no such knowledge.

Action by Eunice M. Jones against Mary Allan for rescission of purchase by plaintiff of two canal boats from defendant. Complaint dismissed.

Root, Orton & Baldwin, for plaintiff.
Kenefick & Love, for defendant.

WARD, J. On the 30th of July, 1894, the plaintiff was the owner of a house and lot in the village of North Tonawanda, in Niagara county, and the defendant was the owner of two canal boats, then in the canal at Buffalo, named the Jacob Gingerich and the Ward H. Groesbeck. The defendant resided in Buffalo. The plaintiff desiring to purchase a couple of canal boats, and having learned of these boats, she went to Buffalo on the 30th, arriving there about 6 o'clock in the evening, accompanied by her brother William A. Heacock, a young man of 18 years of age, and, obtaining an interview with the defendant and her husband, George W. Allan, Jr., the four went together where the boats were lying in the canal, and, after making some examination of the boats, the plaintiff and defendant entered into an agreement whereby the plaintiff agreed to purchase the boats at the price of $2,800, to be paid by the plaintiff conveying her house and lot to the defendant as of the value of $2,500. There was a mortgage on this house and lot of ————. For this the plaintiff gave a chattel mortgage upon the boats for the amount of $700, and her promissory note for $700, secured by the chattel mortgage, and the plaintiff also assumed a dry-dock bill for the repair of these boats, held by one Thomas Riley, a dry-dock man in Buffalo, for $276. The transaction was consummated by the execution of the proper papers. The plaintiff took possession of the boats, and put a couple of coats of paint on them, with a view of preparing them for service on the canal and obtaining cargoes of grain for transportation. In order to have the boats and cargoes insured by insurance companies who engaged in insurance of that character it was necessary to have the boats rated, as it is called, which was done by insurance raters, agents of insurance companies, who made examinations of the boats, and determined whether they were in a proper condition to carry with safety that kind of freight. An insurance rater, Mr. James G. Orr, at the plaintiff's request, made an examination of the boats, and found, upon tearing up the lining or covering of the timbers in the bows and sterns of the boats, and in boring into the timbers, that they were badly decayed, and he refused to rate the boats, or either of them, for carrying grain, and reported the fact to the plaintiff, who immediately sought to rescind the contract by offering to return what she had received under it, and demanding that the conveyance of the house and lot to her (the plaintiff) be delivered, and canceled of record, and the surrender to her by the defendant of the chattel mortgage and the notes which it was given to secure, and did all in her power to accomplish such rescission. The bill for repairs, amounting to $276, not being paid, the lien for such repairs was foreclosed, and the boats were sold, and were purchased by a third party upon such sale, both parties to this action refusing to have anything further to do with the boats. The defendant refused to restore the property received in the transaction by her, and the plaintiff thereupon commenced this action, charging in her com-

plaint that prior to the sale the defendant, with intent to deceive and defraud the plaintiff, falsely and fraudulently represented to the plaintiff that the boats were good grain boats, and that their timbers were sound, and that the boats were in perfect condition for grain, and good to carry grain for 6 or 7 years to come, and were seaworthy; that one of said boats had been built 12 years and the other 13 years, and that the boats were worth $2,800; that the representations were false, to the knowledge of the defendant; that the boats in fact were 13 and 14 years of age, respectively; and negativing the other representations and alleging rescission of the contract, and demanded judgment that the deed, mortgage, and note be delivered up and canceled, and declared void, and for other relief, with costs. The defendant denied by her answer the plaintiff's complaint. Upon the trial the plaintiff and her brother were sworn as witnesses, and stated, in effect, that on the evening in question they examined the boats to some extent by looking over them and into the cabin, and the defendant's husband, in her presence, and with her apparent approval, stated that the boats were in perfect condition to carry grain; that they had just come off the dry dock, and wherever there was poor timber in them it had been taken out and new put in their places; that the boats had been recalked wherever it was necessary; that the boats were 12 and 13 years old, respectively, and were well worth $3,000 and the dry-dock bill, with the stock (the stock being horses and other things connected with the boat); that the boats would carry grain for 6 or 7 years with a reasonable amount of care. The defendant and her husband both testified in regard to these representations, and denied absolutely that they were made, or any of them. The plaintiff testified she relied upon these representations in purchasing the boats. The circumstances outside the testimony of the parties, as disclosed by the evidence, tended to some extent to strengthen the position of the plaintiff in regard to them, and I have reached the conclusion that they were made by the defendant's husband, in her presence, and with her approval, substantially as the plaintiff claims; but, assuming that the representations were made, the chief difficulty with the plaintiff's case is her failure to prove the scienter,—that is the knowledge of the defendant that the representations made by her were false. The evidence tended rather to prove that she believed those statements and made them in good faith. In April, 1893, the defendant purchased these boats, paying therefor about $3,000. Two months later she sold them to one Sheet for the same price, taking back a mortgage on the boats of about $2,200. She did not navigate the boats in person, and in May, 1894, she foreclosed her mortgage, and again took the boats. There were liens upon the boats, other than her mortgage, of nearly $1,000, which she paid. The foreclosure of the mortgage was conducted in New York. The boats were brought back, after the foreclosure, to Buffalo, where they arrived on the 4th day of July, 1894. The defendant then sent the boats to the repair dock of Mr. Riley, with directions to Riley to put them in a fit condition to load, which seems to mean, in canal parlance, a condition fit to carry any load that the boats would or-

dinarily be called upon to take. The boats were repaired, as before said, at an expense of $276, and Mr. Riley swore, in effect, that he thinks the boats were fit to carry grain of all kinds after they were repaired; that before repairing them he looked the boats over with a view to ascertain what repairs needed to be made, and he did not discover any defects in the timbers in the bow or stern or elsewhere, but that he did not tear up the covering on the timbers nor bore into the timbers, as was afterwards done by Mr. Orr. Mr. Orr testified that unless the linings were torn away, or the timbers bored into, the decayed condition of the timbers could not be discovered, and the evidence seems to be that neither party knew of their decayed condition until Mr. Orr made the discovery through the means that he adopted. The defendant swore that she had no such knowledge. The principal difficulty with the boats was the decayed condition of the timbers. But for that, the boats would have been rated for carrying grain, and would probably have been of the value fixed upon them in the exchange of property. As it was, the boats were not worth, as the evidence discloses, to exceed $1,000. Evidence was given tending to show that the boats were 13 and 14 years of age, respectively, instead of 12 or 13, but from the whole evidence it is clear that, whatever was said as to the age of the boats—and there was something said on that subject—was a matter of opinion. The boats had just come off from the dry dock and been painted at the time of the exchange of property, and the evidence convinces me that the defendant believed that the necessary repairs to the boats had been made, and that they were in condition to carry grain, and, in the absence of all knowledge of the condition of the timbers as subsequently disclosed, and as she had sent them to a proper place where all necessary repairs should be made, with directions, in effect, to have them done, and without limiting the cost of such repairs, she had a right to believe that the boats were put in the condition that she had directed that they should be. The misfortune of the situation seems to be that there were concealed defects in these boats, not known to either party at the time of the exchange of property.

While equitable relief is sought in this action, it is predicated upon the alleged fraud of the defendant in making false and fraudulent representations, and the same quality of proof is required to maintain this action as if it were simply for damages for the alleged fraud. The rule in this class of cases is that the representations must be false; made with an intent to deceive as to a material matter. They must be false to the knowledge of the person making them, or that he assumed to know and intended to convey the impression that he did know them to be true, though conscious that he had no such knowledge. The person to whom such representations are made must rely upon them, and he must not have such knowledge or notice that under all the circumstances of the case would put a reasonable person upon inquiry, and he must be pecuniarily damaged by reason of the representations and of which they are the approximate cause. In Shultz v. Hoagland, 85 N. Y. 467, the court of appeals say: Fraud is to be proved. "It is not

enough that the facts are ambiguous, and just as consistent with innocence as with guilt. That would substitute suspicion as the equivalent of proof. They must not be, when taken together and aggregated, when interlinked and put in proper relation to each other, consistent with an honest intent. If they are, the proof of fraud is wanting." And in Morris v. Talcott, 96 N. Y. 107, the court say: "When the evidence is capable of an interpretation which makes it equally as consistent with the innocence of the accused party as with that of his guilt, the meaning must be ascribed to it which accords with his innocence, rather than that which imputes to him a criminal intent." Judged by these rules, the proof fails to establish the plaintiff's cause of action, which must be done by a fair preponderance of evidence in all cases; and in cases of fraud the evidence must be clear and satisfactory. The learned counsel for the plaintiff earnestly urges the proposition that the consideration received by the plaintiff for her house and lot was so grossly inadequate as of itself to create the presumption of fraud, and cites several cases, none of which aid us in the disposition of this case. The parties contracted upon the apparent value of the boats, and, the defendant having acted in good faith with reference to such value, no presumption arises against her of fraud, although the actual value was less than the apparent value in consequence of conditions of which she was ignorant. If this were an action for a breach of warranty, the court might have much less difficulty in relieving the plaintiff. In such an action the scienter need not be proved. It is sufficient there to establish the warranty and the breach thereof; that is to say, that the warranty was not true; that as a matter of fact all of the rotten timbers of the boat had not been replaced by sound ones. But here the plaintiff must establish, in addition to the representations and the breach, the moral turpitude of the defendant, and fraudulent intent, which is the gravamen of this action. This the plaintiff has failed to do, and therefore her complaint must be dismissed upon the merits but, under the circumstances of this case, it should be without costs to either party.

Complaint dismissed, without costs.