# N. Y. COMMON PLEAS.

## WILLIAM E. ANDREWS agt. DAVID SCHWARTZ *et al.*

*Attachment — when will be vacated — what are not sufficient grounds for granting same.*

An attachment should not issue unless it clearly appears that but one construction is to be placed on the acts of the party against whom the attachment is asked — a construction unfavorable to honesty.

Persons who are sued have a perfect right to give up business if it does not pay, or their factory or place of business is burned out, to collect their debts and assets, and to pay or secure their creditors.

There is nothing in these circumstances to warrant the granting of an attachment on the ground that defendants were about to dispose of their property, and to leave the state, in order to defraud their creditors.

*Special Term, May,* 1878.

MOTION to vacate attachment.

Action commenced June 16, 1877. Attachment procured. April 23, 1878, on the ground that defendants were about to dispose of their property, and to leave the state, in order to defraud their creditors.

J. F. DALY, *J.* — This action was brought upon an unliquidated demand for certain royalties alleged to be due from defendants to plaintiff upon the manufacture of oil from animal fat under a process of which plaintiff is patentee. The demand is denied by defendants, and the cause is at issue. Several months after the action was commenced, the factory of defendants, in One Hundred and Seventeenth street in this city, was destroyed by fire, and their business ceased. This

Andrews agt. Schwartz *et al.*

is the explanation of their going out of business. They have sold what remained of their machinery or utensils for a small sum, and have contracted to sell a quantity of oil, the balance of their stock, and are collecting the insurance on the property destroyed by fire. One of the defendants, Schwartz, left the city after the fire and went to Texas. It is said that he is to return. A large part, if not all, of the insurance has been assigned by defendants to one alleged creditor, Jacob W. Riglander, their broker. The only creditors of defendants, except the plaintiff and Riglander, are Michael Madden, their former foreman, who claims a balance of wages, which is disputed, and other workmen whose names and the claims are not set forth in plaintiff's affidavits. The foreman swears that it was the expressed intention of defendants to go out of business some months before the fire. Certain neighbors of defendants swear to suspicions and rumors, in the neighborhood of defendants' factory, as to incendiary intentions of defendants prior to the fire, with respect to the factory. Another witness swears to certain admissions of one of the defendants of sharp practice on his part in Texas some years before, which the witness surmises indicates a swindling propensity on the part of one or both the defendants. Another witness swears to a recent transaction of defendants (in selling the oil before referred to), from which it is intended the court should assume a purpose on defendants' part to cheat the person with whom they contracted and dealt.

Stripped of all that is not evidence the plaintiff's proofs wholly fail to satisfy me that defendants intend to realize on their assets and abscond in order to defraud him or the other unsecured creditor.

The only claims against them the defendants dispute. The alleged fraudulent disposal of property took place long after plaintiff's action was at issue. No other actions have been commenced against them, except one by Madden which they contest. Motive for the alleged fraud is wanting.

The deliberateness of defendants' proceedings is evidence

of good faith. Plaintiff's own witness, Madden, swears that as early as October last defendants instructed him to discharge their employes as they were going to give up business. The fire occurred four months after. Not till after the fire is any disposition of assets shown. Then it takes the form of selling off for $300, remains of machinery or tools, with some of the wreck left after the fire, property estimated by some witnesses at a value as high as $2,000, but which value is the subject of dispute. There is nothing extraordinary in the sale of the oil the defendants had stored, nor in their attempting to collect their insurance, nor in assigning it to secure a creditor, if really indebted to him. With the suspicions concerning the fire at the factory we have nothing to do. It cannot be charged that the defendants made such a disposition of that property, as those suspicions imply, in order to defraud the plaintiff.

In fine, I see in defendants' conduct nothing of those circumstances which mark the absconding debtor. No haste, no secrecy, no motive for flying with their assets. Persons who are sued have a perfect right to give up business if it does not pay or their factory is burned out, to collect their debts and assets and to pay or secure their creditors. An attachment should not issue unless it clearly appears that but one construction is to be placed on their acts, a construction unfavorable to honesty. In this case the defendants are not shown to have done any act prejudicial to their creditors, or out of the usual course. They are not bound to refrain from selling what was saved from the wreck of the fire, even for a small price, if, in their judgment, it was as much as the things were worth. Nor are they bound to refrain from collecting the insurance, or selling their goods, or paying off a debt they owe in preference to keeping their funds to abide the event of plaintiff's suit.

The attachment must be vacated, with ten dollars costs.