GEORGE S. STRINGFIELD *et al.*, Respondents, *against* ALEXANDER FIELDS, Appellant.

(Decided April 13th, 1885).

Upon appeal from an order of the City Court of New York denying a motion to vacate an attachment against property granted on the ground of fraudulent disposition of property by the defendant, the court will not weigh conflicting evidence, or determine the credibility of witnesses; but will consider only whether the proofs submitted show *prima facie* a disposition of property by defendant with intent to defraud his creditors.

The affidavits upon which such an attachment was granted showed that defendant, who was a retail dealer, had, in December, admitted that he was unable to pay plaintiffs' claim, and appeared to be unwilling or unable to disclose his financial standing to plaintiffs; it alleged that he had been daily making sales of his property for cash, and retaining the proceeds for his own use, that within the preceding two weeks he had disposed of a great deal of his stock, was still selling it for cash, was not replenishing his stock, and that his intent was to defraud his creditors; but it also appeared that he had bought goods from plaintiffs during the month, a season in which goods are seldom bought by retailers. *Held*, that a *prima facie* case of fraudulent disposition of property by defendant was not made out; and a motion by him to vacate the attachment, upon which it appeared that during the month he had made large payments to his creditors, and after the levy of the attachment, had made an assignment for the benefit of creditors, which was not assailed, and under which the assignee had taken possession of goods in his store worth several thousand dollars, should have been granted.

APPEAL from an order of the General Term of the City Court of New York affirming an order of that court denying a motion to vacate an attachment.

The facts are stated in the opinion.

*Bankson T. Morgan* and *Alfred J. Walker*, for appellant.

*B. F. Einstein*, for respondent.

VAN HOESEN, J.—A discretionary order made by the General Term of the City Court will not be reviewed by the Court of Common Pleas ( *Walsh* v. *Schulz*, 12 Daly 103). By a discretionary order I mean one that has been made by the judge of the court below upon evidence as to the force and effect of which men of good judgment may fairly differ. In the language of Chief Justice CHURCH, in *Anonymous* (59 N. Y. 315), "when it becomes necessary to weigh conflicting evidence, to decide as to the credibility of witnesses, to consider the effect to be given to the conduct of parties, —in short any question in respect to which there is no fixed established rule or principle of law controlling it,—the order is deemed discretionary, and is not appealable to this court, although it may involve a substantial right within the meaning of that term, as used in the Code." Again, in the case of *Allen* v. *Meyer* (73 N. Y. 1), in determining whether an order vacating an attachment was appealable to the Court of Appeals, that court said : " An order granting an attachment is not appealable, unless it presents a question of law or absolute legal right; but if an order is granted in a case in which it is not authorized, or if there is an entire absence of facts proved justifying it, the case would present a question of law, and the order would be appealable." In the case just cited, the court then examined the record in order to ascertain whether it presented only a question of law, and finding that the decision of the court below was dependent upon " inferences to be drawn from the facts stated," and upon the conclusions of the judge as to " the degree of credit to be given to a witness," dismissed the appeal.

Again, in *Morris* v. *Talcott* (96 N. Y. 100), the Court of Appeals, in determining the appealability of an order that

Stringfield *v.* Fields.

denied a motion to vacate an order of arrest, said: " Where there is no evidence legitimately tending to establish fraud, and the natural inferences to be drawn from the facts stated do not necessarily lead to the presumption of a fraudulent intent, a question of law is presented which calls for the judgment of this court."

In disposing of this appeal, therefore, as we hold with respect to the City Court the position of the appellate court that reviews only questions of law, we shall not weigh conflicting evidence, nor determine the credibility of witnesses, but shall assume the existence of those facts and conclusions that the affidavits of the plaintiff conduced to prove. Some of the affidavits offered on behalf of the defendants contain allegations that the plaintiffs have not controverted, and which do not put in dispute any averment of fact in the affidavits presented by the plaintiffs; to such of the defendants' affidavits as are not denials of the allegations on which the plaintiffs rely for the maintenance of the attachment, reference may be made.

The question to be decided therefore is this: Upon all the proofs submitted, do the plaintiffs show *prima facie* that the defendant has disposed and is disposing of his property with intent to defraud his creditors? It is a crime to dispose of property with intent to defraud one's creditors (Penal Code § 587). I mention this, not because I rely upon the exploded doctrine that in a civil action the wrongful act must be proved beyond all reasonable doubt, but because this court, in *Andrews v. Swartz* (55 How. Pr. 190), and the Court of Appeals in *Morris* v. *Talcott* (96 N. Y. 100), have held that "a party seeking a remedy against another, based upon the alleged commission of a fraud by such person, must show affirmatively facts and circumstances necessarily tending to establish a probability of guilt in order to maintain his claim. When the evidence is capable of an interpretation which makes it as consistent with the innocence of the accused party as with his guilt, the meaning must be ascribed to it which accords with his innocence rather than that which imputes to him a criminal intent."

In this case it is not necessary to invoke that beneficent rule, for the affidavits do not contain a single allegation from which an inference can fairly be drawn that the defendant has disposed or ever intended to dispose of his property with intent to defraud his creditors. After a careful reading of the affidavits presented by the plaintiffs I am utterly at a loss to discover what it was that could have led the learned judges of the City Court to the conclusion that there was any, even the slightest, evidence of fraud against the defendant.

The affidavit of Lumley, sworn to on December 26th, 1883, alleges that on the day before Christmas of that year the defendant said that he could not pay the plaintiffs' claim, or even a part of it; that he did not know the amount of his indebtedness, or the amount of his stock; that he could not say how he stood financially; that he had not looked over his books; that he had been sued on two claims, and that the actions were then pending; and that he had been making some small payments to parties down town, though he could not name the parties to whom the payments had been made, nor the sums paid to them. Having thus given his conversation with the defendant, Lumley then alleges that the defendant has been daily making sales of his property for cash, and retaining the proceeds for his own use. It is not alleged that the sales were made in an unusual manner, or that they were out of the ordinary course of business, or for less than the actual value of the goods, or that they were any other than the ordinary daily transactions of a retail dealer in the regular prosecution of his business. It is not alleged that the sales were large or that the amounts received were greater than the defendant required for his ordinary household expenses and the current expenses of his store. We have no bankruptcy law now in force, and it would be strange if a man could be convicted of making a fraudulent disposition of his property on proof that he paid his current expenses out of the proceeds of an unprofitable business. It is finally alleged that within the preceding two weeks the defendant has dis-

Stringfield v. Fields.

posed of "a great deal of his stock of merchandise," that he is still selling it for cash, that he is not replenishing his stock, and that his intent is to defraud his creditors. A mere allegation of a fraudulent intent is worth nothing unless facts are stated from which the intent charged may be inferred. Now, it is obvious that the sale of goods by a retailer, even if "made daily," and "for cash," does not show that the dealer is making a fraudulent disposition of his property; nor is an inability or an unwillingness to make a full disclosure of his affairs to a creditor proof that a debtor has fraudulently disposed of his property, or that he harbors such a design. It may be a significant fact when found in connection with other facts that point to a fraudulent disposition of property, but, taken by itself, an absolute refusal by a debtor to unbosom himself to his creditor does not even tend to prove that the debtor has placed or intends to place his property where his creditors cannot reach it. It seems to me clear that, conceding that the defendant would not or could not tell the plaintiffs how he stood financially, that he followed his business regularly by making sales of his goods for cash in the ordinary way (and nothing extraordinary is charged), and that he did live out of the proceeds of his sales and pay his current expenses from them, these facts, whether taken separately or all together, utterly fail to warrant a suspicion that the defendant has made or intends to make a fraudulent disposition of his property.

The fact that the defendant did not replenish his stock would not, even if proved, show that the defendant was making away with it. But it is shown by the affidavit of Alexander Lumley, sworn to on January 7th, 1884, and by the affidavit of Moses Einstein, sworn to on January 10th, 1884, that the defendant bought goods of the plaintiffs in December, 1883, the very time at which it is said by Lumley, in his first affidavit, that he was not replenishing his stock. Again, it appears by the affidavit of Robert P. Johnson that during the holiday season goods are seldom bought by retailers, the object of every shopkeeper being to get rid

of as many of his goods as possible at that time. Certainly no suspicion arises because the defendant did not buy goods at the wrong time.

But this is not all. I think that the defendant might confidently have relied for his defense upon the failure of the plaintiffs to make out even a *prima facie* case of fraud, but he did not do so. He made an affidavit, in which he alleged that, in the month of December, 1883, he had actually paid over three thousand dollars to his creditors, and to that affidavit he annexed a schedule of those payments. The plaintiffs undertook to prove that that affidavit was false, but their inquiries strongly confirm its truth. They found only one mistake in it—a payment that the defendant said was made in the early part of December was actually made on the 30th of November, and the amount was not $370.75 but $360.77. Some of the defendant's creditors refused to inform the plaintiffs' agent when they received their money, but several of them did consent to give the information that was sought, and in every instance, save the one I have referred to, it appeared that the defendant, instead of laying money aside for his own use, was steadily paying his debts. It further appeared that the defendant, after the levy of the attachment, made an assignment for the benefit of his creditors, and that the assignee has taken possession of goods in defendant's store worth at least $13,000. A deputy sheriff, who caused an appraisal of a part of the stock to be made, says that the part so appraised is worth nearly $5,000. There is no pretense that the assignment is fraudulent. It is clear, therefore, that the defendant was paying his creditors during the month of December, 1883, and there is every reason to believe that he paid out to them in that month about $3,000; that he was conducting his business in the ordinary way, at retail; that he had on hand when he failed goods of the value of $13,000; and there is no proof whatever that any part of his stock was secretly sent away, or sold out of the ordinary course of business. The assignment is of itself conclusive proof in this case—for it is not assailed—that the goods on hand will

be devoted to the payment of the defendant's creditors; and there is an absolute failure to prove that any goods whatever were fraudulently disposed of.

The order appealed from should be reversed, with costs, and the attachment should be vacated, with costs.

LARREMORE and J. F. DALY, JJ., concurred.

Order reversed, with costs.