Macomber, J.
The plaintiff, who is an importer and seller of straw goods in the city of New York, brings this action to recover damages for the alleged fraud committed upon him by the defendants. The defendant White is a manufacturer of straw goods at Stamford, in the state of *81 Connecticut, where he resides. The defendants Charles H. Coffin, William H. Huriburt and Samuel Shether compose the firm of Coffin & Huriburt, in the city of New York, Coffin and Huriburt being general partners, and Shether a special partner, the latter haying an office and desk room at the place of business of the firm. This firm was engaged in selling on commission the goods of the description manufactured by White, and had a general arrangement with White by which the latter consigned to them all his goods for sale on commission.
This agreement continued from September, 1879, to May, 1883, when White failed. On the 24th day of October, 1882, the Metropolitan Bank held notes of White to the amount of about $95,000, which had been bought mainly of a broker named Taylor. The sales of White’s paper to that bank ceased on October 24, 1882, when the bank declined to buy any more of it. After that date Coffin & Huriburt advanced to White, or paid on his account, large sums of money, the net result of which transactions was to increase White’s liability to them from $28,429.92 to $38,510.04 between October, 1882, and May, 1883. At the time of White’s failure Shether held of his paper the sum of $44,500, upon which or a portion of which he had procured an attachment against the property of White, in the state of Connecticut. After White’s failure several meetings of his creditors were held, at which Shether was present, when the subject of White’s indebtedness at large was discussed and means suggested for an equitable and proper distribution of his property among them. Shether had offered twenty-five cents on the dollar upon all of White’s indebtedness other than his own, which had been declined by the other creditors. Thereupon White made a general assignment of all his property for the benefit of his creditors. White paid $24,000 of notes held by Shether by the sale of merchandise to the latter on June 4, 1883, and on June 8th of the same year a further sum of $4,500 likewise in merchandise, leaving outstanding and unpaid in Shether’s hands six notes, amounting to the sum of $16,000.
It is claimed by the counsel for the plaintiff that the condition of White in October, 1882, was that of insolvency, and that facts and circumstances attending the business relations between him and the firm of Coffin & Huriburt showed knowledge on the part of that firm, as well as on the part of the defendant Shether, of such insolvency, and that the subsequent operations of these defendants with White were undertaken and carried out, including the discharge of an indebtedness to the Metropolitan Bank and the substitution of themselves for a good share of it for *82 the purpose of enabling White to get into his possession large quantities of merchandise from different dealers, and among them the plaintiff, and then to repay themselves for the moneys loaned and which was unpaid upon their commercial paper by receiving into their hands the merchandise so bought by White. It is claimed, too, that the evidence shows that this plan was carried into effect, and that in so doing White purchased of the plaintiff to the amount of $23,388.79 on credit, the first credit expiring shortly after the failure of White, but before his assignment for the benefit of creditors. And that he also purchased of other importers and dealers in large quantities The complaint charges that the defendants acted together in a conspiracy so to defraud the plaintiff, and they did so defraud him out of the value of the goods which he was induced to sell to White on credit.
Upon the examination of the case the fact is disclosed that White made no representations to the plaintiff concerning his financial condition, except that in the early part of the year 1882, he stated that he was doing a prosperous business. Mr. Taylor testified that the defendant Shether told him that White was all right and he would be taken care of. The case, therefore, lacks any direct evidence of the truth of the charge stated in the complaint. It is claimed, however, that the plaintiff should have been allowed to go to the jury upon the case at large by reason of the surrounding facts attending the business connection of the defendants. The actual insolvency of White, if it is shown at all, in October, 1882, is shown only by the testimony of the expert book-keeper Yesey, from'whose figuring it would seem that White was in error in supposing that he was doing a prosperous business for a considerable period preceding October, 1882. This being the only representation which White made to the plaintiffs, it is difficult to see how he could be held for the fraud in procuring the sale by the plaintiffs to him of the goods. An intent to defraud may not be imputed to a purchaser of property on credit, merely from the facts that he was, to his knowledge, insolvent at the time of the purchase, and that he omitted to disclose such condition to his vendor. _ These must be accompanied by other facts disclosing an intent to acquire the property without paying for it. Morris v. Talcott, 96 N. Y., 100. Even this assertion by White was not a représentation of solvency. It was only to the effect that he was doing a prosperous business, and was made a long time Erior to the sales to him by the plaintiffs; and it seems to ave had no necessary connection with the acts of the plaintiff as an inducement to him to part with his goods.
If any conspiracy was formed by the defendants to de *83 fraud creditors generally, it was so formed in the month of October, 1882. After that time, as has already been pointed out, the indebtedness of White to the firm of Coffin & Hurlburt was increased upwards of $10,000. The defendant Shether seems also to have advanced moneys in considerable sums to White and to have largely increased White’s indebtedness to him during the same period. This is not the way in which conspirators to defraud commonly act. It is a matter of common knowledge that merchants often are assisted in critical times by aid furnished in this manner, and thereby enabled to extricate thomselves from financial difficulties. Of such efforts the courts hear only of those which are unsuccessful. There is nothing discoverable in this case that would warrant any inference that the defendants did anything in the premises except to aid the defendant White in carrying on his business and in affording him a fair opportunity by a favorable turn in trade to discharge his debts and to do thereafter a prosperous business. That they were unsuccessful in their efforts ought not to be charged against them. When in the month of May, 1883, it was found that White could no longer carry on his business, but was hopelessly insolvent, the firm of Coffin & Hurlburt, as well as the defendant Shether, had the same rights as all other creditors to pay themselves out of the property of their debtor, provided “ they used no other than lawful means to that end. The same diligence which was shown by them was available also to the plaintiff and other creditors.
The counsel for the plaintiff seems to rely largely upon the case of Place v. Minster (65 N. Y., 89), and urges upon us a contention that the doctrines of that case are sufficient to enable the plaintiff to recover in this action. The decision of the commission of appeals in that case was based wholly upon positive, direct and conclusive testimony of the organization, the existence and the carrying into effect of a flagrant conspiracy to defraud the plaintiff in that action. It is for the reason that the case before us lacks the evidence which existed in the case before the commission of appeals that we think that the trial judge was correct in directing the plaintiff to be non-suited. For, as was decided in Morris v. Talcott, already alluded to, a party seeking to establish a cause of action or a right to a remedy against another based upon alleged fraud, must show affirmatively facts and circumstances necessarily tending to establish a probability of guilt. If the evidence is capable of an interpretation equally consistent of the innocence or of the guilt, the former meaning must be given to it.
The judgment should be affirmed.
Daniels and Beady, JJ., concur.