LEOPOLD WISE et al., Respondents, *v.* HUGH J. GRANT, as Sheriff, etc., Impleaded, etc., Appellant.

Where a sale and delivery of goods is procured by fraudulent representations on the part of the purchaser the title and possession pass to him notwithstanding the fraud, subject to the right of the vendor to rescind the contract of sale.

Until the vendor has exercised his option to rescind, either directly or by some act in disaffirmance of the sale, the purchaser has a leviable interest in the goods, and if levied upon by attachment or execution against the purchaser prior to rescission, it cannot be held that the vendor had "the right to reduce" the property into his possession within the meaning of the provision of the Code of Civil Procedure (§ 1690, subd. 3) which declares that an action to recover a chattel cannot be maintained "when it was seized by virtue of an execution or a warrant of attachment against the property of a person other than the plaintiff, and at the time of the seizure the plaintiff had not the right to reduce it into his possession."

Accordingly *held*, where, prior to any act on the part of the vendor showing an intention to rescind such a contract of sale, the goods had been levied upon by virtue of an attachment against the purchaser, that an action of replevin to recover the goods was not maintainable.

*It seems*, the remedy of the vendor, in case of refusal of the sheriff to deliver the goods on demand, is an action for conversion.

(Argued December 22, 1893; decided January 16, 1894.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made November 22, 1892, which affirmed a judgment in favor

of plaintiffs entered upon a verdict, and also affirmed an order denying a motion for a new trial.

This action was an action of replevin to recover possession of certain goods, which the complaint alleged had been wrongfully obtained from plaintiffs by the defendant Maier Rothschild, and which the defendant Hugh J. Grant, as sheriff, obtained possession of by virtue of an attachment issued against said Rothschild and others.

The goods in question were sold and delivered by plaintiffs to said Rothschild, the sale having been induced by false and fraudulent representations on the part of the purchaser as to the property owned by him and the amount of his indebtedness.

Plaintiffs did not discover the fraud until after the goods had been levied upon by the sheriff and taken into his possession. Upon discovering the fraud they demanded possession of the sheriff, and upon his refusal to deliver brought this action.

*Abraham Gruber* for appellant. The plaintiffs did not have the right to reduce the property into their possession at the time it was taken by the defendant Grant under the attachment against the Rothschilds. (*Powers* v. *Benedict,* 88 N. Y. 609; *Moller* v. *Tuska,* 87 id. 166; *Baird* v. *Mayor, etc.,* 96 id. 567; *Morris* v. *Rexford,* 18 id. 552; Code Civ. Pro. §§ 1690, 1695, 1720; *Rogers* v. *Arnold,* 12 Wend. 30; *Hasbrouck* v. *Lounsbury,* 26 N. Y. 298; *Talcott* v. *Belding,* 46 How. Pr. 419.) The judgment should be reversed for errors in the judge's charge to the jury. (*Brackett* v. *Griswold,* 112 N. Y. 454; *Driggs* v. *Phillips,* 103 id. 77; *Whitten* v. *Fitzwater,* 129 id. 626.)

*Otto Horwitz* for respondent. The plaintiffs had a right to rescind the sale and take their goods, even though they were in the possession of the sheriff. (*Goodwin* v. *Wertheimer,* 99 N. Y. 149; *Stevens* v. *Breanan,* 79 id. 254.) The complaint was in proper form, and a demand as against the defendant sheriff was alleged and proven. (*Miller* v. *Mont-*

*gomery,* 78 N. Y. 282–286 ; *Pontius* v. *People,* 82 id. 339–
347 ; *Treat* v. *Hathorn,* 3 Hun, 646 ; Code Civ. Pro. §§ 723,
1720, 1721 ; *Wooster* v. *Sherwood,* 27 N. Y. 278–288;
*Acker* v. *Campbell,* 23 Wend. 372; *Devoe* v. *Brandt,* 53 N.
Y. 462–466.) There are no exceptions in the case which
require any serious consideration by this court, and in the rul-
ings of the trial judge to which these exceptions were taken
no errors will be found. (*Hine* v. *Bowe,* 114 N. Y. 357;
*Raymond* v. *Richmond,* 88 id. 671; *Bennett* v. *Judson,* 21
id. 238; *Smith* v. *Countryman,* 30 id. 655; *Daly* v. *Wise,*
132 id. 306.)

ANDREWS, Ch. J. The only question of any difficulty
relates to the right of the plaintiffs to the remedy by replevin.
There was abundant evidence that the sale of the goods to
Rothschild was procured by him by fraudulent representations.
But the title and possession passed to the purchaser by the
sale and delivery, notwithstanding the fraud, subject how-
ever, to the right of the vendors to rescind the contract if
they should so elect. (*Powers* v. *Benedict,* 88 N. Y. 605.)
There can be no claim that the contract had been rescinded
when the sheriff seized the goods on the attachment against
Rothschild. It was not until after the seizure that the plaintiff
became aware of the fraud. The seizure under the attach-
ment was the first notice they had. Prior to that time the
plaintiffs had done nothing to disaffirm the contract, and noth-
ing had occurred to put them on inquiry as to the *bona fides*
of the purchase. On being apprised of the seizure under the
attachment, they demanded the goods of the sheriff, and then
brought this action. Section 1690 of the Code of Civil Pro-
cedure declares that no action to recover a chattel can be
maintained (sub. 3) " when it was seized by virtue of an execu-
tion or a warrant of attachment against the property of a
person other than the plaintiff, and at the time of the seizure
the plaintiff had not the right to reduce it into his possession."
The question is whether the plaintiffs, at the time of the
seizure by the sheriff under the attachment against Rothschild,

had the "right to reduce" the property seized to their possession. If they had such right at that time, within the meaning of section 1690, they can maintain the action; if not, the remedy by replevin against the sheriff does not lie, but they are remitted to an action for conversion. Notwithstanding the seizure they could rescind the contract of sale. Neither the sheriff nor the creditors in the attachment were, by reason of the seizure, in the situation of purchasers for value, and it is only persons in that situation, purchasing in good faith, who are protected against the title of the defrauded vendor who seasonably, on coming to a knowledge of the fraud, elects to rescind the contract. The bringing of the replevin was an act of rescission (*Moller* v. *Tuska*, 87 N. Y. 166; *Powers* v. *Benedict*, 88 id. 605), and restored to the plaintiffs the title to the goods and put them in a position to assert that title, and in ordinary cases would give them a right to proceed either in replevin or for damages on the refusal of the person in possession to surrender them. The sheriff, having refused to deliver the goods to the plaintiffs on demand, might have been sued for conversion, but the test whether they can maintain replevin against the officer is made by section 1690 to depend upon the fact whether, "at the time of the seizure" under the attachment, they had the right to reduce the goods to their possession. The meaning of the words in the section, "the right to reduce it (the property) into his possession," is the point in controversy. Did the plaintiffs, "at the time of the seizure" by the sheriff, have this right? At that time Rothschild had both the possession and the legal title to the goods. The plaintiffs, at that time, had neither title nor possession. They had had a right to rescind the contract of sale for the fraud of Rothschild, upon doing which their right to the possession would accrue, but they had not rescinded for the reason that the fraud was not then known to them. If they had known it and had exercised the right of rescission, or done any act in disaffirmance of the sale before the seizure, a different question would be presented. It is plain that so long as the contract remained unrescinded

Rothschild had a leviable interest in the goods. It was the duty
of the sheriff to seize the property under the attachment, and
in doing what he did he simply performed his duty as a public
officer. He acquired by the seizure a legal lien on the property.
The plaintiffs might not elect to rescind when they came to
learn of the fraud. If they did not so elect the lien would
continue; if they did elect to rescind the lien would, on such
election, be displaced in favor of their original title. We
think it cannot be said that the plaintiffs had a right to reduce
the property to possession when the seizure was made. They
had no such right except upon rescission, and this, as we have
said, had not taken place. The right would arise upon and in
consequence of a rescission and not otherwise. The last clause
of sub. 37 of sec. 1690 was, we think, intended to exempt
from the prohibition of that section cases of constructive as
distinguished from actual possession, and to give the remedy
to the true owner where the possession by the attachment or
execution debtor was without right, or a mere custody for the
true owner, the legal possession being in him at the time of the
seizure, through his agent, servant or naked bailee. Prior
legislation and the course of decisions reflect some light on the
interpretation of the clause in question. It has been the
policy in this state from an early period to restrict the remedy
of replevin in cases of seizure by sheriffs or other officers on
legal process. It was decided at an early day that a defendant
in a process could not maintain replevin against the officer
for goods seized in execution. (*Thompson* v. *Button*, 14 Jo.
86; *Gardner* v. *Campbell*, 15 id. 402.) They were deemed
to be in the custody of the law. The principle was sought to
be extended to all cases where the goods were taken from the
possession of the defendant in the process, although he
was a custodian merely, and it was asserted that the true
owner, although a stranger to the process, was precluded
from maintaining replevin. This extension of the doctrine
of *custodia legis* to goods taken from the possession of
agents or servants was distinctly repudiated in *Clark* v.
*Skinner* (20 Jo. 465), in which it was held that replevin

lies at the suit of the true owner of a chattel against a sheriff, constable or other officer who has taken it from the owner's servant or agent while employed in the owner's business by virtue of an execution against such servant or agent. It was, the court held, sufficient to maintain replevin that the property, when taken, was in the actual or constructive possession of the true owner, and that the possession of an agent or servant was the possession of the master or principal. The court, in its opinion, used the phrase "right to reduce to possession," being the same phrase substantially as the phrase in section 1690 of the Code, and it was used as the equivalent of "constructive possession." The court said : "But the question is, what is meant by the possession in such case. I understand by it not only the actual but the constructive possession of the owner, and by constructive possession I mean a right to reduce the chattel to immediate possession." In *Marshall* v. *Davis* (1 Wend. 109) SAVAGE, Ch. J., uses substantially the same language. After stating that replevin will lie where trespass can be maintained, he says : "And in trespass, it is well settled, that the plaintiff must have either actual possession, or property and constructive possession ; by which is meant, the right to redeem the article to his possession at pleasure." Section 1690 of the Code is taken in most part from the Revised Statutes (2 Rev. St. 523, §§ 4, 5). Section 5 of the title of the Revised Statutes, relating to the action of replevin, prohibits the remedy by replevin at the suit of the defendant in an execution or attachment for goods seized thereunder, unless they are exempted by law from such seizure, and proceeds : "Nor shall a replevin lie for such goods or chattels at the suit of any other person unless he shall, at the time, have a right to reduce into his possession the goods taken," using the same phraseology in substance as is contained in section 1690 of the Code. Section 5, as reported by the revisers, was framed to prevent replevin in any case where goods are taken in execution from the possession of the defendant, no matter to whom they belonged. The revisers intended by the section to change the rule established in *Clark* v. *Skinner*, that if the possession of the defend-

ant in the execution was that of agent or servant, this would not prevent a replevin by the master or principal. (See note 5, Ed. St. 497.) But the legislature changed the section as reported, obviously for the purpose of sanctioning the rule declared in *Clark* v. *Skinner*. It is quite reasonable, therefore, to suppose that the phrase "unless he shall at the time have a right to reduce into his possession the goods taken," was inserted in the section of the Revised Statutes referred to as a paraphrase of the words "constructive possession," in accordance with the definition of those words given in the cases then recently decided. We think the words "right to reduce" to possession, in sec. 1690 of the Code, were intended to cover a case where the possession of the plaintiff was constructive, and not actual, and that they do not cover a case where the right to reduce to possession was potential only, and which required for its existence the doing of some act which should terminate a legal possession in another as owner, and transfer the right of possession to the plaintiff.

These views lead to a reversal of the judgment and a new trial.

All concur.

Judgment reversed. _____