GEORGE BORGFELDT & Co., Appellant, *v.* GEORGE B. WOOD and Others, Respondents.

*Sale — what constitutes a rescission thereof for fraud — the disaffirmance must be communicated to the vendee — leviable interest of the vendee until rescission — when replevin will not lie.*

A vendor of goods has a right to rescind the sale for fraud, but until he has exercised his option to rescind, either directly or by some act in disaffirmance of the sale, the purchaser has a leviable interest in the goods, and if they are levied upon by attachment or execution against the purchaser before rescission the provisions of subdivision 3 of section 1690 of the Code of Civil Procedure, as it stood in 1893, forbid the vendor from thereafter maintaining an action to recover the goods.

Rescission is the legal consequence of the election of the defrauded party to repudiate the contract, and it takes its date from the time when he announces his election to the opposite party.

A representative of a vendor met the vendee at a meeting of his creditors and charged him with insolvency at the time the goods were purchased, to which the vendee replied that he was not insolvent at that time, and that he had only recently found out that he was so. After leaving the creditors' meeting the vendor went to see his attorney, consulted with him, and finally instructed him to replevy the goods at once. After this conversation, and before the goods were replevied, they were levied upon under executions against the vendee.

The vendor did not, at the creditors' meeting, communicate to the vendee his intention of replevying the goods, or take any definite position towards the vendee at any time before the goods had been levied on under executions issued in favor of other creditors.

*Held*, that the evidence did not show a rescission of the contract of sale before the levy by the sheriff;

That nothing which the vendor said to the vendee disabled the vendor from suing upon the contract, and that any mental determination to seize the goods, or any instructions to his lawyer not communicated to the vendee, were ineffectual to work a rescission.

APPEAL by the plaintiff, George Borgfeldt & Co., from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of Onondaga on the 19th day of March, 1895, upon the verdict of a jury rendered by direction of the court after a trial at the Onondaga Circuit.

*James Dunne* and *Charles E. Ide*, for the appellant.

*C. W. Andrews*, for the respondents.

MERWIN, J.:

In and prior to September, 1893, the plaintiff was a corporation engaged in the mercantile business in New York city, and the defendants George B. and Charles W. Wood were merchants, doing business at Syracuse, under the firm name of Reuben Wood's Sons. Between January 1, 1893, and September 1, 1893, the plaintiff sold and delivered to the Woods goods to the amount of $4,000 and upwards. On or about September 14, 1893, the Woods failed in business, having been for some time insolvent, and on the 15th of September, 1893, several judgments were obtained against them and entered in Onondaga county, and on the same day executions were issued to the sheriff of that county and levy made by him on the property described in the complaint with other property. On the 16th of September, 1893, the plaintiff commenced the present action in replevin against the Woods and the sheriff to obtain the possession of a portion of the goods previously sold and delivered by plaintiff to the Woods. In the affidavit upon which the requisition was based, it is alleged that at the time the Woods obtained the goods, they knew themselves to be insolvent and obtained the goods with a preconceived intent not to pay plaintiff therefor. It was also alleged that the defendant, the sheriff, claimed to hold the goods by virtue of executions issued to him against the Woods. The goods were taken on the requisition from the possession of the sheriff, and the value was at the trial agreed on at $2,475.98. At the close of the evidence the court directed a verdict for the defendants, dismissing the complaint and for a return of the goods replevied or for the value fixed at $2,475.98, and interest on that sum from September 16, 1893, as damages for detention.

The main question on this appeal arises over the application of

the provisions of section 1690 of the Code of Civil Procedure. By that section, as it stood in 1893, it was provided that an action to recover a chattel cannot be maintained "3. Where it was seized by virtue of an execution, or a warrant of attachment, against the property of a person other than the plaintiff, and, at the time of the seizure, the plaintiff had not the right to reduce it into his possession."

There is no doubt about the right of a vendor of goods to rescind the sale for fraud, but until the vendor has exercised his option to rescind, either directly or by some act in disaffirmance of the sale, the purchaser has a leviable interest in the goods, and if they are levied upon by attachment or execution against the purchaser prior to rescission, the provision of section 1690, above quoted, applies. (*Wise* v. *Grant,* 140 N. Y. 593.) In that case it was held that where, prior to any act on the part of the vendor showing an intention to rescind, the goods had been levied upon by virtue of an attachment against the purchaser, an action of replevin to recover the goods was not maintainable. It was there conceded that the bringing of the replevin was an act of rescission, but as that did not occur until after the levy on the attachment, the provision of section 1690 applied.

In the present case the replevin was not brought until after the levy by the sheriff, and the *Wise* case is authority to sustain the judgment, unless, as the plaintiff claims, there was, in substance, a rescission prior to the levy by the sheriff, in the afternoon of September fifteenth. Upon this subject it appears that on the eighth of September, the Woods called a meeting of their creditors for the fourteenth of September in New York city. At that meeting the defendant Charles W. Wood was present, and also, among others, Mr. Kahle, representing the plaintiff. Mr. Kahle, as a witness for plaintiff, testifies: "I told him (Wood) that I believed they were insolvent on the 1st of January, and that he received our goods by fraud. He had no right to accept them. He denied that. He said that they were not insolvent January 1st, and they only found that they were insolvent the Saturday before calling the meeting. Then the creditors spoke about accepting a compromise of 25 per cent, which was rejected and a proposition made that, if an offer of 40 per cent would be made, the creditors would possibly accept.

That was in Mr. Wood's presence. I then left the meeting without acting upon the proposition. After leaving the meeting, on my way up town, I stopped in to see our lawyer, Mr. Dunne, and consulted him in regard to our matter. I instructed you to start the same evening, if possible, for Syracuse; not to delay the matter at all, any more than you could possibly help. It was for the purpose of replevying the goods; taking out replevin proceedings." Upon cross-examination Kahle testifies: " I have detailed, as far as I can remember, everything that I said to Mr. Wood on that day at that meeting. I left the meeting before he did. I said nothing to him at that time about beginning an action of replevin. * * * On my way home from the meeting I stopped to see Mr. Dunne, our lawyer. I submitted the statement to him; stated also that they were largely indebted to us; what steps we would take to protect our interests. I asked, so far as I remember, whether we could recover our goods, as I had no doubt they were obtained by fraud — false pretenses; that these people, when they received our goods, were insolvent. I stated this to Mr. Dunne. I was convinced at that time of that fact." It appears also from the testimony of Mr. Dunne that in the afternoon of September fourteenth Mr. Kahle called on him for advice and he advised him to replevy the goods; that on the morning of the fifteenth he prepared an affidavit in replevin against the Woods alone, which Mr. Kahle signed; that in the afternoon of the fifteenth he learned from a newspaper that judgments had been entered against the Woods, and he then changed the affidavit so as to include the sheriff, and sent for Kahle, who came and signed it; that on the sixteenth he came to Syracuse and replevied the goods. The summons in the action is dated the fifteenth, but was not delivered to any officer for service until the sixteenth. This is in substance the evidence from which it is claimed that there was a rescission prior to the afternoon of the fifteenth.

From this evidence it may be inferred that Mr. Kahle, in the afternoon of the fourteenth, made up his mind to rescind the sale; but he had no communication with Wood after he so made up his mind, nor were the papers for bringing the replevin suit completed until the afternoon of the fifteenth and after the judgments and levy by the sheriff. There was no act by the plaintiff as to the property until the sixteenth. It is argued that the interview between Kahle

:and Wood at the creditors' meeting on the fourteenth was a sufficient notice of the intention of Kahle to rescind the sale.  He, however, said nothing as to what he intended to do, and he said nothing that would at all interfere with his suing on the contract.  Besides, he did not in fact know then what he would do, and did not make up his mind until he advised afterwards with his counsel, and after that he did not see or communicate with Wood.  We fail to see how the interview between Wood and Kahle, as testified to by Kahle, ·can be construed to be notice of an intention by plaintiff to rescind.

In Benjamin on Sales (6th ed., § 443) it is said that the rescission is the legal consequence of the election of the deceived party to repudiate the contract, and takes date from the time at which he announces the election to the opposite party.  (See, also, *Stevens* v. *Hyde,* 32 Barb. 171 ; 21 Am. & Eng. Ency. of Law, 84.)

We are of the opinion that the evidence given on the part of the plaintiff did not show a rescission before the levy of the sheriff, nor would it authorize the jury to find such a rescission.  If there was an intention on the part of the plaintiff on the fourteenth or fifteenth to rescind, it was not in any way communicated or manifested to the Woods, nor was there any act on the part of the plaintiff that committed it on the subject until the replevin suit was in fact commenced.

The judgment appealed from is, therefore, correct within the authority of the *Wise* case.

HARDIN, P. J., and PARKER, J., concurred.

Judgment affirmed, with costs.