(3 App. Div. 553.)

## PINCKNEY v. DARLING, Sheriff.

(Supreme Court, Appellate Division, First Department. April 10, 1896.)

1. REPLEVIN—WHEN LIES.
   A seller, having merely the right to rescind for fraud, cannot, where the property is seized under an execution against the purchaser, before any steps by the seller towards rescission, maintain replevin against the sheriff.
2. TROVER—CONVERSION.
   The seller of goods, after seizure thereof under execution against the purchaser in favor of a third party, demanded the property of the buyer, and stated his resolution to rescind the sale for fraud, and offered to return the note received in payment. *Held*, that the seller was then in position to sue the sheriff, who seized the property under the execution, for conversion, and that his subsequently acquiring possession of the property would not necessarily defeat his right of action, though it would go in mitigation of damages.
3. SALE—RESCISSION—FRAUD—INSOLVENCY.
   The mere insolvency of a buyer, and his failure to disclose it, there being no intention not to pay, do not authorize rescission for fraud.

Appeal from circuit court, New York county.

Action by Charles C. Pinckney against Albert M. Darling, sheriff of Suffolk county. From a judgment for defendant entered February 1, 1895, and an order denying a new trial, plaintiff appeals. Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, WILLIAMS, and PATTERSON, JJ.

J. M. Bowers, for appellant.
T. Cleveland, for respondent.

PATTERSON, J. This appeal is from a judgment in favor of the defendant, entered by direction of the court after a trial of the issues, and from an order denying plaintiff's motion for a new trial. The pleadings present a somewhat unusual situation as regards the attempt at enforcement of a claim of the character sued upon here. The facts as they appear are substantially the following: The defendant, the sheriff of Suffolk county, on February 18, 1892, levied upon certain personal property in the possession of the Orient Manufacturing Company at its works, in Suffolk county, under an execution against that company issued upon a judgment obtained by the firm of Crenshaw & Wisner, merchants in the city of New York, and also described as having been the agents of the Oriental Manufacturing Company. On or about the 2d of March, 1892, the plaintiff, claiming the same property, began this action, which was then in form an action in replevin, and caused a writ to be issued to the coroner of Suffolk county, who on the same day took the property from the possession of the sheriff, and held it for the plaintiff, and that property was not rebonded, and never was in any form returned to the custody of the sheriff. For two years the action proceeded upon the distinct basis of its being in replevin. In April, 1894, an application was made by the plaintiff to this court for leave to amend the complaint, and to set up another cause of action, which leave

was accorded; and thereupon the plaintiff inserted in the complaint a second count, charging the sheriff with the unlawful conversion of the merchandise, and asking a judgment for damages occasioned by such conversion.    Upon this state of the pleadings, the cause came to trial, and the effort on the part of the plaintiff was to establish his own title to and right of possession of the goods at the time this action was instituted; or, failing in that, to establish his right to recover damages for the conversion of the goods, upon the ground that their retention by the sheriff after demand was unlawful, and authorized a recovery as in an action of trover.    The facts appearing in evidence upon which these respective claims of the plaintiff are based must be stated in detail.

Mr. Pinckney, the plaintiff, was the proprietor of certain phosphate beds in South Carolina, the product of which beds was sold in the market.    The Orient Manufacturing Company was a customer of Mr. Pinckney.    All of the transactions of the Orient Manufacturing Company with Mr. Pinckney were had through a broker in Baltimore, who represented the plaintiff; and for several years the Orient Company and its predecessor in business had purchased phosphate from Mr. Pinckney through the Baltimore broker.    All of their dealings were carried on by correspondence between the broker and Crenshaw & Wisner, officers or agents of the Orient Company.

On the 14th of December, 1891, Mr. Pinckney's broker in Baltimore made an offer in writing to the Orient Company of a certain quantity of phosphate, in a letter which is as follows:

"December 14, 1891.

"Messrs. Orient Manufacturing Company.
"Mr. C. C. Pinckney, Jr.
"A cargo of about six hundred tons sand-rock phosphate from Magnolia Mines, South Carolina, hot air dried. All moisture over two per cent. to be allowed for @ $6.00 per ton, 2,240 lbs., delivered to buyer's schooner at seller's wharf, Ashley river, South Carolina. Actual sworn weights. Prompt shipment. Payable, cash or by four months' note, to buyer's order, from date bill lading, adding interest at six % P. @ buyer's option."

On the 15th of December, 1891, the contract proposed in the letter above quoted was accepted by the Orient Manufacturing Company through John H. Wisner, its treasurer, by a letter dated on the last-mentioned day, in which it is stated, among other things:

"Contract for sale of Magnolia rock herewith accepted. The clause about sworn weights we presume to be intended for output weights heretofore, but it is not clear. We shall be glad if you will amend the contract to cover this point." And, "We have a wire from our Mr. Armstrong advising the charter of a vessel now in Wilmington, North Carolina, and to proceed at once to loading point on the same date."

The plaintiff's agent at Baltimore wrote to Mr. Wisner, the treasurer, acknowledging the receipt of his letter, and said:

"Glad your man got vessel so promptly. Give us her name, please, and size. The clause about sworn weights referred to in contract means just as we have delivered heretofore."

On the 17th of December, Mr. Wisner, the treasurer of the Orient Company, wrote to the agent of the plaintiff at Baltimore a letter containing, among other things, the following:

"The vessel we have chartered to load in Charleston is the 'Emma Knowlton,' and we hand herewith copies of charter party. Will you kindly pass same on to Mr. C. C. Pinckney, Jr., for inspection?"

On the 18th of December, the plaintiff's agent in Baltimore wrote to the Orient Manufacturing Company as follows:

"Note you have taken the schooner 'Emma Knowlton' to load the cargo of Magnolia rock, and have handed the charter party to Mr. Pinckney. Inclosed, we beg to hand you note for this cargo [referring to the broker's note]."

On the 30th of December, 1891, the agent of the plaintiff at Baltimore wrote to Mr. Wisner, the treasurer of the Orient Company, inclosing the bill of lading for the cargo per schooner Knowlton; and on the same day the receipt of that bill of lading was acknowledged by the Orient Manufacturing Company. On the 20th of January, the Orient Company sent to the broker of Mr. Pinckney at Baltimore the weigher's returns of the cargo of the Emma Knowlton, the receipt of which was acknowledged on January 21, 1892. And on the 27th of the same month the agents wrote to the Orient Company that those weights were approved by Mr. Pinckney, and asked for a prompt settlement. On the 30th of January, 1892, a note at four months of the Orient Manufacturing Company for $3,184.86, dated back to December 4, 1891, was forwarded in settlement.

This correspondence contains the whole history of the transaction concerning the purchase and sale of the cargo of phosphate rock, the subject of this action. It will be observed that there was not one word of communication between the parties other than what is contained in this correspondence. It appeared in evidence at the trial that the Orient Manufacturing Company, at the time the transaction was entered into, was, as matter of fact, in some financial embarrassment; and the effort was made by the plaintiff to show that the concern was actually, and to the knowledge of those engaged in its management, insolvent, and a claim is based upon that state of facts which will presently be further considered.

Upon the proofs as they appear from the correspondence above quoted, it is claimed by the plaintiff that he was entitled to repossess himself of the goods in an action of replevin, for the reason that the title thereto never passed out of him, and that the facts proven indicate that there was no intention that the title should be divested from him until after the goods were weighed, the returns accepted, and the merchandise paid for, either in cash or by a good note of a solvent maker. We do not see how it is possible to infer from the correspondence as it is spread out before us that the contract entered into between the plaintiff and the Orient Manufacturing Company was not fully performed, or how the transaction remained incomplete in any sense. It is not to be disputed that where, by an agreement between buyer and seller, the seller is to do anything to put the goods in that state or condition in which the purchaser would be bound to accept them, or that where anything remains to be done to ascertain quantity or quality before the duty to deliver attaches, or where the buyer is bound to any condition precedent, the title will not pass. But this case falls within neither of these conditions. The clear intention of the parties as expressed in the contract is that the goods

and all right to them should pass to the purchaser on delivery. They were to be delivered on board the Orient Manufacturing Company's own chartered vessel. That company not only accepted that delivery from the plaintiff at the port of shipment in South Carolina named in the contract, but the plaintiff's agent subsequently sent to it the bill of lading, and thus the consignee got the muniment of title in addition to the actual possession; and so complete dominion was acquired over the goods by paper title voluntarily given and actual possession. The weighing of the goods was clearly a matter of detail subsequent to the passing of title and possession, and merely to determine the exact quantity that should be paid for at the fixed price of the contract, on sworn returns. Such returns were made, and, furthermore, were accepted by Mr. Pinckney; and by that acceptance every term of the contract was complied with, except payment after delivery. The giving of a note was in performance of the contract, and was intended to be, and was received as, payment for the cargo. The case, therefore, is one in which an action for replevin will not lie, because, if anything adverse to the Orient Company is to be deduced from any feature of the transaction, it is not the want of title to the goods levied on by the sheriff, which were those ex Emma Knowlton, but only an inference of fraud on the part of the officers of that company whereby Mr. Pinckney was induced to part with the title to and possession of his goods; and whether that inference may be drawn will be the subject of further inquiry. We have, then, here presented, substantially the same state of facts as that which arose in the case of Wise v. Grant, 140 N. Y. 593, 35 N. E. 1078. The title and possession of the plaintiff, even if parted with by fraud of the Orient Company, passed to the purchaser, notwithstanding the fraud, subject to the right of the seller to rescind for the fraud; and meantime, and until that right of rescission was exercised, the title and possession remained in the purchaser; and when the property was seized by virtue of an execution against the purchaser, and before any step towards rescission was taken by the seller, the action of replevin could not be maintained against the sheriff. It was in accordance with this view, and in consequence of the decision of the court of appeals in Wise v. Grant, that, two years after this action was commenced, the plaintiff undertook to reconstruct it, by adding the second cause of action, namely, that in conversion against the sheriff.

It is shown in the proofs that although the property was taken on a replevin writ, and thus actually passed out of the possession of the sheriff, nevertheless, on March 1, 1892, and before the sheriff gave up the property to the coroner, the plaintiff, through his attorneys and in writing, demanded "the immediate return of his property now in your hands, under an execution upon the judgment of Crenshaw and Wisner against the Orient Manufacturing Company, consisting of five hundred and twenty-six [and a fraction] tons Magnolia phosphate rock now in the Orient Manufacturing Company's works. Said rock was obtained by the fraud of said company from Mr. Pinckney, and he claims the same, and has rescinded the sale and delivery of said rock to said company." At about the same date, the

plaintiff, through his attorneys, demanded the merchandise from the Orient Manufacturing Company, and stated his resolution to rescind the sale and delivery thereof, as having been induced by fraud of the officers of the Orient Company; and he offered to return at the proper time the note which was received in settlement. By giving this notice and the expression of his election to rescind the contract, the plaintiff put himself in a position, technically, to maintain an action for conversion.    His subsequently acquiring possession of the goods, by process of replevin or otherwise, would not necessarily defeat his right to maintain trover, although, of course, it would go in mitigation of damages; for, the goods being restored to him on the writ of replevin, the damages in conversion would be merely such as were suffered by reason of the interference with possession, and the deprivation of his right of dominion over his own property.    But, so far as his right to the maintenance of the action is concerned, there is no doubt that the exercise of authority over personal property, to the exclusion or in defiance of the real owner's right, is a conversion; and where a levy is made, even although the property is not removed from the actual possession of the owner, or where the property is restored to his possession, the action of trover will lie.    Reynolds v. Schuler, 5 Cow. 323.    And so it has been held that, to support trover, it is not necessary even to show a manual taking of possession, but that the exercise of dominion over the property, to the exclusion of the real owner, and without any attempt on the part of the defendant to apply the property to his own use, constitutes a conversion. Bristol v. Burt, 7 Johns. 254.    Thus, finding in this case that the plaintiff has put himself in a position, by notice and demand, while the sheriff held the goods, to institute, technically, the action, it becomes necessary to inquire whether there was any proof made or offered at the trial sufficient to go to the jury, and upon which they might have found that the plaintiff was entitled to rescind the contract for fraud.    This becomes of paramount importance in this case, notwithstanding the fact that the damages by reason of the return of the property might be insignificant; for, upon the disposition of the case made by the learned judge at circuit, the necessary result was the entry of a judgment in favor of the defendant, the sheriff, for the value of the merchandise, and that judgment is now outstanding against the plaintiff.

The plaintiff urges that his right to rescind the contract arises from fraud or fraudulent practices on the part of the officers of the corporation respecting the transaction in and by which he was induced to part with his goods to the Orient Company.    We have already seen that of actual representations concerning the condition of the company or its solvency, or the amount of its property, or of its business, there were none.    The plaintiff has endeavored to establish by circumstances, from the books of the company, and other evidence of its condition, and of the value of its assets and credits, that it was actually and hopelessly insolvent at the time the transaction was entered into for the purchase and sale of the merchandise under the particular contract involved in this action.    The elements of fraud that would give rise to a right to rescind this con-

tract are so well understood that it is scarcely necessary to cite authorities. It is not fraudulent per se for a person in embarrassed circumstances to buy goods, withholding the information from the seller of the actual condition of his business affairs. It seems to be a cardinal factor in cases of this character that there must exist an intent on the part of the purchaser to cheat the seller, or, as said in Nichols v. Pinner, 18 N. Y. 295, there must exist, at least, an intention to do an act the necessary result of which will be to cheat and defraud another. And as said in the case of the Phœnix Iron Co. v. The Hopatcong and The Musconetcong, etc., 127 N. Y. 206, 27 N. E. 841, the fact of insolvency and the failure of a debtor to disclose the condition of his business, unless there is an intent not to pay for what was purchased, do not constitute such fraud as would entitle a creditor to rescind a contract. And so, also, in the case of Hotchkin v. Bank, 127 N. Y. 329, 27 N. E. 1050, it is said in the opinion of the court that the law is well settled in this state that the mere omission of a purchaser of goods on credit to disclose his insolvency to the vendor, in the absence of any attempt to defraud, will not avoid the sale, although the fact if known to the seller would have affected the credit of the purchaser. And in Morris v. Talcott, 96 N. Y. 100, it is said:

"It is well settled in this state that an intent to defraud cannot be imputed to a party who contracts a debt knowing that he is insolvent, merely from the fact of his insolvency, and his omission, upon a purchase of property upon credit, to disclose such condition to his vendor. A condition of known insolvency on the part of an intending purchaser of property, accompanied with an intention of acquiring the property of his vendor without paying for it, constitutes such a fraud as will make the vendee liable to arrest in an action for the debt. But the intention not to pay can no more be inferred from the mere fact of insolvency than the fact of insolvency can be inferred from the existence of an intention not to pay. In either case it is essential that the necessary facts be made out by competent evidence."

Therefore, all the evidence that appeared in this case, and all the inference that may be deduced from that evidence with reference to the actual financial condition of the Orient Company, would be futile as constituting a right to rescind, unless it can be fairly deduced from all the circumstances of the case as they appear, or as it may be reasonably inferred they might have been made to appear by evidence offered and rejected at the trial, that the intent existed on the part of the agents of the Orient Manufacturing Company to get these particular goods from Mr. Pinckney, and not to pay for them. We think from an examination of the proofs that no such inference can be drawn. There can be no doubt that this Orient Company was conducting a going business, and conducting it in a legitimate manner. Messrs. Crenshaw & Wisner were the agents of that company, and had made large advances to it, to enable it to carry on its business. These advances were honest loans of money and credit. The merchandise was bought of the plaintiff in the same way as all other merchandise which had been sold by Mr. Pinckney many times before, through his agent in Baltimore, to the Orient Company. No representation was made of any kind with respect to the business. There can be no doubt that Crenshaw & Wisner advanced their mon-

eys to keep the company on its feet, and it is shown by their own letter written to the other creditors of the company after its failure that the judgment which they entered, and under the execution on which the sheriff levied on the goods in question, although they were honest creditors to the full amount of that judgment, was one which they had obtained, "not for the security of themselves, but one that would be used or might be used for the benefit of all creditors alike," including the plaintiff. In view of this letter, it is idle to contend that Crenshaw & Wisner entered into the contract with Mr. Pinckney for this cargo of merchandise simply for the purpose of obtaining his property by fraud to increase the corporate assets, or to feed the fund to pay their claim for advances. Had they any such intention, they never would have advised the creditors, immediately their judgment was recovered, that that judgment was to be used as a basis for an arrangement for the benefit of all the creditors. On the 18th of February, in a circular letter sent to every creditor, they said they did not intend to make use of this judgment to secure preference for themselves, and proposing that all unsecured creditors, including themselves, should be treated alike. It appears sufficiently in this case that negotiations were pending with the foreign stockholders of the Orient Company to induce them to put money into that corporation to aid it in its business; and it was only upon receiving information that those stockholders would not come to the assistance of the company that Crenshaw & Wisner, the agents and managers, deemed it wise and for the interest of all to discontinue business, and to preserve the assets for the benefit of all the creditors. That their action, which was begun in February, 1892, was not contemplated in December, 1891, seems to be an inevitable conclusion, and we are not able to find anywhere in the case any proof that these goods were procured from Mr. Pinckney by fraud with an intent not to pay for them, or in such a way as would entitle him to rescind the contract.

We have examined the exceptions taken during the progress of the trial; but, in the view that we take of the main questions of law and fact involved, it is unnecessary to consider them, as we think the plaintiff cannot recover in any aspect in which the case was presented, and that the judgment should therefore be affirmed, with costs.

BARRETT, RUMSEY, and WILLIAMS, JJ., concur. VAN BRUNT, P. J., concurs in result.