STANDARD NATIONAL BANK OF THE CITY OF NEW YORK and NATIONAL BROADWAY BANK, Appellants, v. GARFIELD NATIONAL BANK, Respondent and Appellant, Impleaded with HOMER R. SCOVILLE, as Substituted Assignee for the Benefit of Creditors of WILLIAM W. MACFARLANE & COMPANY and Others, Respondents.

*Insolvent corporation — right of a creditor thereof to property improperly assigned by it, which has been sold under a judgment against the assignee — statutes applicable, in the State of New York, to foreign corporations.*

Where a foreign corporation executes to a copartnership, at a time when both are insolvent, a bill of sale of personal property situated in the State of New York, in consideration of the sum of one dollar and the assumption by the copartnership of all the debts of the corporation, a creditor of the copartnership, who, before the bill of sale, which was accompanied by a change of possession of the property sold, had been attacked by either the corporation, its stockholders or creditors, obtains a judgment against the copartnership and levies upon the property covered by the bill of sale, is not obliged to account for the proceeds of the execution sale to creditors of the corporation.

Such a bill of sale is not void, but simply voidable.

Section 48 of the Stock Corporation Law (Laws of 1892, chap. 688), relative to transfers made by a corporation when insolvent, does not apply to foreign corporations.

Comity does not require effect to be given to a general statute of the State in which a corporation was organized, not a part of the charter or of the organic law of the corporation, for the purpose of depriving a domestic creditor of a lien acquired by him, under the laws of the State of New York, upon property situated therein.

Appeal by the plaintiffs, the Standard National Bank of the City of New York and another, from that portion of an interlocutory judgment of the Supreme Court in favor of the defendants Homer R. Scoville, as substituted assignee for the benefit of creditors of William W. MacFarlane & Company, and others, entered in the office of the clerk of the county of New York on the 26th day of April, 1900, upon the decision of the court rendered after a trial at the New York Special Term as adjudges :

(1) That the moneys and property accounted for by the different defendants and others shall be applied to the equal ratable payment of the obligations of the defendant, the National Silk Label Company, to other creditors than the plaintiffs.

(2) That the defendant, the Garfield National Bank, shall not be required to intervene or contribute to the expenses of this action as a condition of its sharing in such moneys and property.

(3) That the referee take proof and report the amounts of the claims of other creditors than the plaintiffs, and also of those creditors who shall intervene in the action.

Also an appeal by the defendant, the Garfield National Bank, from the whole of such interlocutory judgment.

*Jonathan C. Ross,* for the Standard National Bank.

*Henry B. Twombly,* for the National Broadway Bank.

*John J. Adams,* for the Garfield National Bank.

McLaughlin, J. :

This action, by two judgment creditors of the National Silk Label Company, was brought to set aside a bill of sale made by the National Silk Label Company, a foreign corporation, to the firm of William W. MacFarlane & Co., upon the ground that it was fraudulent and void, having been given with intent to hinder, delay and defraud cred-

itors, and to compel the defendant, the Garfield National Bank, to account for the proceeds derived from a sale of the property covered by such bill of sale under an execution issued upon a judgment which it had obtained against MacFarlane & Co. . The plaintiffs had a judgment setting aside the bill of sale and directing the Garfield National Bank to account for the proceeds derived from the sale under its execution to *all* of the creditors of the silk label company. From this judgment the plaintiffs and the Garfield National Bank have appealed, the plaintiffs upon the ground that they are entitled to a preference over the other creditors of the silk company, and the Garfield National Bank upon the ground that, by virtue of its levy and sale and the payment over of the proceeds of the property sold under the execution, it is entitled to hold the same irrespective of the other creditors of the silk company.

There is no dispute between the appealing parties as to the material facts involved in the subject-matter of the litigation. These facts are substantially as follows: On and for some time prior to the 25th of April, 1896, the firm of William W. MacFarlane & Co. was engaged in manufacturing "gum silk," and, for the purpose of utilizing the same, the members of MacFarlane & Co. or the relatives of their families organized, under the statutes of New Jersey, a corporation, the National Silk Label Company. The business of the corporation and of the copartnership was carried on separately, but in the same building, and both had offices at 81 Grand street in the city of New York. On the 25th of April, 1896, the copartnership and the corporation were insolvent and unable to meet their maturing obligations, including certain notes held by the plaintiffs and the Garfield Bank. On that day the silk label company executed to MacFarlane & Co. a bill of sale of its personal property, the consideration of which was the sum of $1 and the assumption by MacFarlane & Co. of all the debts of the silk company. On the following Monday, April twenty-seventh, MacFarlane & Co. made a general assignment for the benefit of creditors to one Richardson, who took possession of the property assigned, which included certain personal property at 81 Grand street in this city. On the twenty-ninth of July following the Garfield National Bank obtained a judgment against the firm of MacFarlane & Co. for $14,759.95, upon which, on the eleventh of September, it caused to be issued

and delivered to the sheriff of the county of New York an execution, under and by virtue of which he levied on that day upon certain goods which the silk company, on the twenty-fifth of April previous, had at 81 Grand street, and which, on that day, by the bill of sale above referred to, it sold and delivered to MacFarlane & Co. Under the levy thus made the goods, on the twenty-ninth of September, were sold, and the proceeds of the sale, amounting to $12,875, were paid to the Garfield Bank to apply on its judgment.

On the 22d of September, 1896, one of the plaintiffs, the National Broadway Bank, brought an action to set aside the general assignment made by McFarlane & Co. upon the ground that it was made with intent to hinder, delay and defraud creditors, and, after a trial had, the same was, on the 20th of July, 1897, set aside, but nothing was realized by the plaintiff under the judgment thus obtained. On the 6th of November, 1896, this action was brought by the National Broadway Bank — in which the Standard National Bank subsequently joined — which, after a trial, has resulted in the judgment appealed from.

Upon the appeal from such judgment the plaintiff banks contend, as they did in the court below, that by the commencement of this action they acquired an equitable lien upon the property of the silk company, or so much of it as is necessary to satisfy their claims. Their contention is that the bill of sale by the silk company to MacFarlane & Co. was void; that the assignment by MacFarlane & Co. was also void; that such bill of sale and assignment being void, they had the right to take and hold, for the purpose of satisfying their claims, sufficient property of the silk company which was sold by it to MacFarlane & Co., and by such firm assigned to Richardson; that this right was not destroyed by the levy and sale under the execution referred to; that the only effect, so far as they are concerned, of such levy and sale, was to change the property sold into money, and that such money, in law, belongs to them, and for which the Garfield Bank must account. The Garfield Bank contends that MacFarlane & Co., at the time the levy was made, had not only the title but the possession of the property sold, and, therefore, that the bank had a legal right to make such levy and sale for the purpose of satisfying the judgment which it held against MacFarlane & Co., and having this right, it is under no obligation to account to the plaintiffs, or any one else, for the proceeds derived from such sale.

The conclusion at which we have arrived renders it unnecessary for us to pass upon many of the questions discussed in the briefs submitted. The bill of sale from the silk company to MacFarlane & Co., accompanied by a change of possession of the property specified in the bill of sale, transferred to MacFarlane & Co. the legal title of the property sold. The bill of sale was not, as contended by the plaintiffs, absolutely void, either under the statutes of this State or the statutes of New Jersey. It was, if made as contended by the plaintiffs, not void but voidable, and so long as MacFarlane & Co. held both the title and the possession, it could give good title to a purchaser, and this irrespective of whether the sale was for cash or in payment of an antecedent debt.

If this conclusion be correct, then it necessarily follows that while the property remained in the possession of MacFarlane & Co., and before the bill of sale had been set aside, repudiated, or at least attacked in some way by either the silk company, its stockholders or creditors, it could be levied upon and sold for the purpose of satisfying a judgment against MacFarlane & Co.

Section 48 of the Stock Corporation Law of the State of New York (Laws of 1892, chap. 688) has no application. This section, among other things, provides that "No conveyance, assignment or transfer of any property of any such corporation by it, or by any officer, director or stockholder thereof, nor any payment made, judgment suffered, lien created or security given by it or by any officer, director or stockholder when the corporation is insolvent, or its insolvency is imminent, with the intent of giving a preference to any particular creditor over other creditors of the corporation shall be valid. Every person receiving, by means of any such prohibited act or deed any property of the corporation, shall be bound to account therefor to its creditors, or stockholders or other trustees. * * * Every transfer or assignment, or other act done in violation of the foregoing provisions of this section, shall be void."

The silk company was a foreign corporation and the section of the statute quoted applies to domestic corporations. It does not apply to foreign corporations. In *Vanderpoel* v. *Gorman* (140 N. Y. 569), the court, referring to this section, said: "We have no doubt that this section refers solely to domestic corporations. The whole of the chapter from which the section is taken is, in sub-

stance, a revision of the law relating to certain classes of corporations, as contained in the Revised Statutes and their amendments, and it is plain that those statutes generally, if not in every provision, referred to domestic corporations only." (See, also, *Coats* v. *Donnell*, 94 N. Y. 168; *Lane* v. *Wheelwright*, 69 Hun, 182.)

Nor has section 64 of chapter 185 of the Laws of 1896 of New Jersey any application. This section, among other things, provides that: "Whenever any corporation shall become insolvent, or shall suspend its ordinary business for want of funds to carry on the same, neither the directors nor any officer or agent of the corporation shall sell, convey, assign or transfer any of its estate, effects, choses in action, goods, chattels, rights or credits, lands or tenements, nor shall they or either of them make any such sale, conveyance, assignment or transfer in contemplation of insolvency, and every such sale, conveyance, assignment or transfer shall be utterly null and void as against creditors, provided that a *bona fide* purchase, for a valuable consideration, before the corporation shall have actually suspended its ordinary business, by any person without notice of such insolvency, or of the sale being made in contemplation of insolvency, shall not be invalidated or impeached."

This statute of New Jersey is a general one. It is not a part of the charter or the organic law of the silk label company, and, therefore, has in and of itself no extra territorial effect. As was said in *Hoyt* v. *Thompson's Executor* (19 N. Y. 225), quoting the words of Chief Justice RUGGLES: "It is a conceded principle that the laws of a State have no force *proprio vigore* beyond its territorial limits. But the laws of one State are frequently permitted, by the courtesy of another, to operate in the latter for the promotion of justice, where neither that State nor its citizens will suffer any inconvenience from the application of the foreign law," and quoting the words of PAIGE, J.: "The statutes and laws of a country have no intrinsic extra-territorial force. They bind only its own citizens, and citizens of other countries while within its jurisdictional limits and they bind directly only property within those limits. They do not affect or bind property out of its territory, or persons not resident therein. Whatever extra-territorial force those statutes and laws are permitted to have, is the result of the voluntary consent of other nations. This consent is accorded upon the principle of the

comity of nations alone, and not from any international obligation to yield to such statutes and laws the slightest obedience. But no nation, on any recognized principles of comity, is morally or otherwise bound to enforce foreign laws prejudicial to its own rights, or the rights of its citizens." And as was also said in *Mabon* v. *Ongley Electric Co.* (156 N. Y. 201): "While the laws of a foreign state have no force as such in this state, still, our courts uphold the title of a foreign assignee or receiver upon the principle of comity. If the title is by virtue of a voluntary conveyance or transfer it is sustained as against all, including even domestic creditors, but if it depends on a foreign statute or judgment it is sustained against all except domestic creditors."

What is here said of the statute of another State of course does not apply to the statute which forms a part of the charter of the corporation, or under which it was organized, and which must be taken notice of by all persons dealing with the corporation. The distinction between a general statute and one which forms a part of the organic law of a corporation is pointed out in *Hoyt* v. *Thompson's Executor* (*supra*). Judge COMSTOCK, delivering the opinion of the court in that case, said: " There is no doubt that all persons dealing with or deriving title from a foreign corporation are bound to take notice of every limitation upon its powers, contained in its charter. The question of corporate power must, of necessity, enter into all such dealings. But other laws of a general nature, enacted by a foreign State, although tending to abridge or modify those powers, fall within the well settled rule that where knowledge of a foreign law is material upon a question of good faith, such knowledge must be shown. This rule must be applied to the case before us. Thompson was a citizen of New York, and purchased the bond and mortgage in controversy within this State. As his title rested upon the assignment of the Morris Company to the State of Michigan, it would be defective if the assignment was forbidden by the charter of that company. But the statute of 1829 related to all the corporations in the State of New Jersey. It was substantially an insolvent law, applicable to those bodies and having no extra-territorial force." Here no claim is made but that the Garfield Bank acted in good faith, not only in procuring its judgment against Mac-

Farlane & Co., but also in issuing the execution and causing a sale to be made under it, of the property held by MacFarlane & Co. The levy, it will be remembered, was made by a creditor of the State, upon goods situated in the State, and, under such circumstances, we do not think — notwithstanding the rule of comity existing between the States — effect should be given to a statute of a foreign State, for the purpose of depriving such creditor of a lien acquired by him under the laws of our own State. The Garfield Bank had the right, under our laws, to make the levy which it did. It could treat as it did the assignment made by MacFarlane & Co. to Richardson as of no effect. (*Chautauque County Bank* v. *Risley,* 19 N. Y. 369; *Becker* v. *Torrance,* 31 id. 631; *Hess* v. *Hess,* 117 id. 308.) Having this right, it cannot, after a sale has been made, be called upon to account at the instance of a judgment creditor of the silk company or MacFarlane & Co., for the proceeds derived from the sale. The recent case of *Lopez* v. *Campbell* (163 N. Y. 340) is in point. There the court said : " The principle is well established that where tangible personal property has been levied upon by execution, prior to the commencement of an action or proceeding in the nature of a creditor's bill, to set aside transfers or judgments, the property is to be regarded as that of a judgment debtor ; and where there was a prior valid levy or lien, it is superior to any subsequent lien of the creditor who instituted such action or proceeding. A creditor is entitled to the preference acquired, in the ordinary course of legal procedure, notwithstanding the insolvency of the corporation." And *Wise* v. *Grant* (140 N. Y. 593) is also in point. In that case it was held that " where a sale and delivery of goods is procured by fraudulent representations on the part of the purchaser, the title and possession pass to him, notwithstanding the fraud, subject to the right of the vendor to rescind the contract of sale," and until he " has exercised his option to rescind either directly or by some act in disaffirmance of the sale, the purchaser has a leviable interest in the goods, and if levied upon by attachment or execution against the purchaser, prior to rescission," an action of replevin to recover the goods is not maintainable.

The Garfield Bank held a valid judgment against MacFarlane & Co., upon which it caused to be issued an execution, under which the levy was made upon property, both the title and possession of which

was at that time in MacFarlane & Co. The silk company did not then have either the title or possession. It had, at most, only the right to reclaim possession by rescinding the bill of sale theretofore given, upon the ground that there was either no adequate consideration for it or that it was made with intent to hinder, delay and defraud creditors. The creditors or stockholders might also rescind upon the same ground. But to us it seems clear that so long as the bill of sale remained in full force and effect, until it had been questioned or assailed in some way, either by the silk company, its stockholders, or creditors, MacFarlane & Co. had a leviable interest, not only as against the silk company, but its creditors, stockholders and all others. Upon the execution being delivered to the sheriff, it was his duty to levy and sell, and by such levy a legal lien was acquired upon the property levied upon which ripened into a good legal title when the sale was made. The bank, after the proceeds of the sale had been delivered to it, was substantically in the same position as it would have been had MacFarlane & Co. made no assignment, but instead had sold the property themselves, and, after receiving the proceeds of the sale, paid it to the bank in satisfaction of the debt.

It follows that the judgment appealed from must be reversed and a new trial ordered, with costs to the appellant, the Garfield National Bank, to abide the event.

VAN BRUNT, P. J., INGRAHAM and HATCH, JJ., concurred.

Judgment reversed, new trial ordered, costs to appellant, the Garfield National Bank, to abide event.